The GENERAL TIRE & RUBBER COM-
PANY, Plaintiff,

v.

ISOCYANATE PRODUCTS, INC.,
Defendant.

ISOCYANATE PRODUCTS, INC.,
Plaintiff,

v.

The GENERAL TIRE & RUBBER COM-
PANY, Defendant.

Civ. A. Nos. 3183, 3184.

United States District Court
D. Delaware.

July 14, 1967.

Arthur G. Connolly, Jr., and Januar
D. Bove, Jr., of Connolly, Bove & Lodge,.
Wilmington, Del., John T. Kelton, Her-
bert Blecker and Thomas V. Heyman,
of Watson, Leavenworth, Kelton & Tag-
gart, New York City, Frank J. Earnheart
and Frank C. Rote, Akron, Ohio, of coun-
sel, for General Tire & Rubber Co.,.
plaintiff.

C. Walter Mortenson, of Mortenson &
Weigel, Wilmington, Del., Virgil E.
Woodcock and John J. Mackiewicz, of
Woodcock, Phelan & Washburn, Philadel-
phia, Pa., and Charles A. Weigel, Jr.,
Washington, D. C., of counsel, for Iso-
cyanate Products, Inc., defendant.

OPINION

CALEB M. WRIGHT, Chief Judge..

On March 30, 1966 The General Tire
and Rubber Company (General Tire)
brought a patent infringement action.
against Murphy Body Works, Incorpo-
rated (Murphy) in the Eastern District.
of North Carolina. The next day Gen-
eral Tire filed a similar patent infringe-
ment action in this District against Iso-
cyanate Products, Incorporated (Isocya-
nate), Murphy's supplier. A few hours.
later Isocyanate filed a declaratory judg-
ment action against General Tire, also.
in Delaware.

After this initial flurry of activity,
Murphy moved the North Carolina Court.

for a stay of the proceedings pending the outcome of the Delaware actions. The motion was denied. Subsequently, several motions were filed in this Court. First, General Tire has moved that Civil Action Number 3184, the declaratory judgment proceeding, be dismissed as duplicitous. Second, Isocyanate asks that Murphy be added as a party plaintiff to the declaratory judgment proceeding. And, third, Isocyanate asks this Court to enjoin the North Carolina proceeding. These three motions are before the Court for resolution.

Isocyanate manufactures ten distinguishable systems for the manufacture of polyurethane foam which have been alleged to infringe the General Tire patent. Murphy uses four of these ten systems to produce foam which is used in insulating truck bodies. Since the foam, which is the subject of General Tire's patent, is not present until the chemicals are liberated from the drums, Murphy, Isocyanate's customer, is charged with direct infringement whereas Isocyanate is only charged with inducement to infringe.

Murphy's defense before Judge Larkins in North Carolina is being undertaken by Isocyanate pursuant to the terms of an agreement between Isocyanate and Murphy. Another agreement provides that Isocyanate will undertake Murphy's representation in Delaware, and will satisfy a judgment against

Murphy should General Tire succeed.[1] One of the defenses to the North Carolina action, indeed, the principal defense, and the basis for the Delaware action, is the invalidity of the General Tire patent on the ground that Kenneth Satterly, the Secretary-Treasurer of Isocyanate is the prior inventor of the patented subject matter.

■ Absent other considerations, a plaintiff is at liberty to litigate in the forum of his choice.[2] But the above stated proposition becomes an exception more often than a rule in complicated litigation such as the present where there are other factors bearing upon the determination of a proper forum which must be considered. Paramount among these considerations is the economy of judicial effort which militates against the relitigation of essentially the same issues in different forums. Since Isocyanate is unwilling to submit itself to the jurisdiction of the North Carolina Court, Delaware is the only jurisdiction where the issues of validity and infringement with respect to six of Isocyanate's ten systems may be litigated.[3] And, since Murphy, bolstered by the Isocyanate indemnity agreement, has agreed to submit itself to the jurisdiction of this Court, Delaware seems to be the logical focal point for this action. This is especially so since the alternative is two litigations over essentially the same subject matter in two different forums.

1. It has been urged that since the real party in interest in the North Carolina action would be Isocyanate, and that since Isocyanate would control the North Carolina action, Isocyanate would be bound by the res judicata effect of any North Carolina action as would General Tire in a subsequent action between the two. E. g., Trumatic Mach. & Tool Co. v. O. M. Scott & Sons Co., 180 F.Supp. 838 (S.D.N.Y.1960). Unfortunately, however, the res judicata effect of the North Carolina judgment could not be coterminous with the area of dispute between General Tire and Isocyanate since it would cover only four of the allegedly ten infringing systems.

2. "In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." Smith v.

McIver, 22 U.S. (9 Wheat.) 532, 535, 6 L.Ed. 152 (1824) (Marshall, C. J.).

3. The general rule is that a patentee who has lost on the issue of validity in one District against one defendant may relitigate the validity issue against another defendant unimpeded by the previous result. E. g., Pierce v. Allen B. DuMont Laboratories, Inc., 156 F.Supp. 237 (D. Del.1957) (Layton).

There are indications that the rule may be crumbling. Nickerson v. Pep Boys-Manny, Moe & Jack, 247 F.Supp. 221 (D. Del.1965) (Steel). Recently the President's Commission on the Patent System recommended that a patentee be estopped from relitigating the issue once the patent was found invalid, § 294 "Estoppel and Cancellation."

For some reason, unfathomable to this Court, Murphy is willing to join as a party plaintiff in the declaratory judgment action, where it would be subject to General Tire's counterclaim for infringement, but is unwilling to join as a party defendant in the infringement action. Hence, the order of this Court will be that Murphy be joined as a party plaintiff in the declaratory judgment action, and that the declaratory judgment action then be consolidated with the infringement action. The consolidated action, to avoid giving Isocyanate any unwarranted procedural or psychological advantages, will then be treated for all purposes as a patent infringement action with a counterclaim for invalidity. Finally, to avoid any duplication of counsellary activity, any discovery which has been taken in the North Carolina action may be filed in the consolidated Delaware action.

Despite the arguments of counsel for General Tire, the cases which have dealt with analogous situations do not require a contrary result. The key case in this area is Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 189 F.2d 31 (3d Cir. 1951), aff'd. 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); it has been relied upon by both sides. A close reading of the case supports the position outlined above.[4]

In *Kerotest* the holder of a patent brought an infringement action in Chicago against a customer of a manufacturer. Next, the manufacturer brought a declaratory judgment action in Delaware. And, finally, the manufacturer was joined as a party defendant in the Chicago action. The manufacturer then appeared before Judge Rodney, in this District, and requested that the Chicago proceedings be enjoined. The manufacturer's theory was that the manufacturer was not before the Chicago Court at the time the Delaware declaratory judgment action was filed. Therefore, the manufacturer argued, the Delaware action was the first filed between the principal antagonists, the patentee and the manufacturer, and should be permitted to prevail. Judge Rodney agreed with the manufacturer, but he was reversed by the Third Circuit which was affirmed by a divided Supreme Court.

Chief Judge Biggs, writing for the Circuit Court, concisely framed the principal consideration:

"In the instant case the whole of the war and all the parties to it are in the Chicago theatre and there only can it be fought to a finish as the litigations are now cast. On the other hand if the battle is waged in the Delaware arena there is a strong probability that the Chicago suit nonetheless would have to be proceeded with for [the customer] is not and cannot be made a party to the Delaware litigation. The Chicago suit when adjudicated will bind all the parties in both cases. Why, under the circumstances, should there be two litigations where one will suffice?" 189 F.2d at 34.

In the present case the prime consideration of economy will be best served by consolidating the litigations in Delaware after permitting Murphy to be joined as a party, and forestalling the North Carolina proceedings. All the parties to the dispute are then in Delaware, and the principal antagonists may then fight to a finish.

There are, however, additional considerations which weigh heavily in favor

---

4. Mr. Justice Frankfurter's remarks for the affirming majority stress the fact that the Illinois Court was the situs of the first-filed action, and caution against the use of a declaratory judgment action to rerun the once lost race to the courthouse door. But Mr. Justice Frankfurter was well aware of the need for flexibility to meet such forum contests:

"Wise judicial administration, giving regard to *conservation of judicial resources and comprehensive disposition of litigation*, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." 342 U.S. at 184, 72 S.Ct. at 221. (Emphasis supplied.)

of this course of action. If the North Carolina litigation is permitted to proceed, it will only proceed as to four of the ten allegedly infringing systems. Thus, should General Tire prove the victor, and should the North Carolina judgment be res judicata as to Isocyanate, it would only be res judicata as to four-tenths of the dispute. There would still be a need for the Delaware action. Any such dress rehearsal before the main confrontation should be avoided where possible. To paraphrase Judge Clark's remarks in Telephonics Corp. and Fabrionics Corp. v. Lindly & Co., 291 F.2d 445 (2nd Cir. 1961), the North Carolina action is simply an attempt to litigate in another forum a dispute that is basically between Isocyanate and General Tire.

▪ Here the first-filed action was brought against Murphy in North Carolina, some distance from the manufacturer's home base. Recent cases recognize that suits against customers in far-flung jurisdictions should not be preferred over a direct confrontation between the principal parties interested in the outcome of the litigation, irregardless of the first-filed rule. Squeez-A-Purse Corp. v. Stiller, 149 F.Supp. 60 (N.D.O.1957).[5] The Ohio Court's disparaging remarks about the tactics of successive customer's suits apply with equal force here:

> "The court in Kerotest stated that it is not to be assumed that the lower courts will permit holders of weak patents to avoid real tests of their patent's (sic) validity by successive suits against customers in forums inconvenient to the manufacturers or selected because of greater hospitality to patents. This is not to say that the defendant's patent here involved is a weak one, but only that the tactics used by him are those used by holders of weak patents.

> "The fact that defendant filed its suit in North Carolina about four or five days before this action was commenced is of no importance under the circumstances of the controversy between the parties." 149 F.Supp. at 61.

See also, in this regard, Sybil Ives, Inc. v. Helene Curtis Industries, Inc., 249 F. Supp. 865 (S.D.N.Y.1965), which, although a trademark action, demonstrates the rationale of departing from the first filed action in a customer's suit.[6]

Finally, since this is a question of alternative forums, it seems appropriate to note that there is a three year waiting period for a trial date in the Eastern District of North Carolina which contrasts sharply with the immediate availability of a trial date in this District.[7] The Court believes that the considerations recited above, and the law as interpreted by this Court, warrant the action outlined above in order that if war must be waged, to employ Chief Judge Biggs' metaphor, total war may be restricted to one geographical area.[8]

5. See further, Sortex Company of North America v. Mandrel Industries, Inc., 226 F.Supp. 995, 997 (W.D.Mich.1965).

6. But see, contra, United States Time Corp. v. Hamilton Watch Co., 327 F.2d 338 (2nd Cir. 1964) (per curiam affirming Judge Timbers' refusal to enjoin a suit against a General Time customer in Maryland). Subsequently, the Maryland Court declined to stay the proceedings against the customer pending the resolution of the Connecticut conflict. Hamilton Watch Company v. Read Drug & Chemical Co. of Baltimore City, 35 F.R. D. 125 (D.Md.1964).

7. An interesting case which is very much in point in this regard is Piedmont Shirt Company v. Snap-Tab Corporation, 236 F.Supp. 975 (S.D.N.Y.1964). In *Snap-Tab* Judge Ryan noted first the erosion of the first-filed rule in suits of this nature, and then proceeded to analyze which of the two forums—New York or South Carolina—provided the "better vehicle for the prompt adjudication of the controversy". One of the factors which weighed heavily with Judge Ryan was the early availability of a trial date in South Carolina.

8. At this point, in view of the doctrine that injunctions against proceedings in courts of concurrent jurisdiction are not to be lightly undertaken, it seems appropriate to indicate that this Court has

The foregoing shall constitute this Court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

Submit order.

discussed these proceedings with Judge Larkins in the Eastern District of North Carolina to secure his views as to the most expedient means of unraveling this procedural tangle. Judge Larkins is aware of the action being ordered by this Court, and, he voiced no objection.