The GENERAL TIRE & RUBBER COMPANY, Plaintiff,

v.

JEFFERSON CHEMICAL COMPANY, Inc., Defendant.

No. 68 Civ. 1227.

United States District Court, S. D. New York.

April 6, 1970.

On Rehearing May 5, 1970.

See also D.C., 46 F.R.D. 607.

Watson, Leavenworth, Kelton & Taggart, New York City, for plaintiff; John T. Kelton, New York City, of counsel.

Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City, Carl G. Ries, Houston, Tex., for defendant; James R. Sweeney, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

Plaintiff, The General Tire & Rubber Company (General) sues for a judgment declaring U.S. Patent 3,102,875 (the Heiss patent), allegedly owned by defendant, Jefferson Chemical Company, Inc. (Jefferson), invalid and not infringed. Jefferson's answer contains two counterclaims. The first is for alleged infringement of the Heiss patent. The second seeks a judgment declaring invalid patent No. 3,072,582 (the Frost patent) owned by General.

General moves (1) for an order severing the second counterclaim relating to

the Frost patent pursuant to Rule 21, Fed.R.Civ.P., and transferring that counterclaim to the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 1404(a)[1] and (2) for an order staying the portion of the action relating to the Heiss patent until the final determination of a pending action between Jefferson and Mobay Chemical Company in the Delaware Chancery Court, which relates to the ownership of the Heiss patent.

(1) The Motion for severance and transfer of the counterclaim on the Frost patent.

Rule 21, Fed.R.Civ.P., provides that "[a]ny claim against a party may be severed and proceeded with separately." The court may order the severance of a claim where it will serve the ends of justice and further the prompt and efficient disposition of the litigation. Wyndham Associates v. Bintliff, 398 F.2d 614 (2d Cir.), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). See also, Value Line Fund, Inc. v. Marcus, 161 F. Supp. 533 (S.D.N.Y.1958); Container Co. v. Carpenter Container Corporation, 9 F.R.D. 89 (D.Del.1949); Michigan Tool Company v. Drummond, 33 F.Supp. 540 (D.D.C.1938); 3A J. Moore, Federal Practice ¶ 21.05 at 2911–2912 (2d ed. 1969).

There appears to be no good reason why defendant's second counterclaim on the Frost patent cannot be severed from the litigation in this district involving the Heiss patent. The Frost patent counterclaim involves a claim for relief independent of and separate and distinct from the complaint and counterclaim on the Heiss patent. The two patents do not appear to be related. While both are concerned with the broad field of polyurethane chemistry, the inventions, the dates of invention, the inventors, places of invention and the ownership are all

different. The operative facts and the legal issues concerning the validity of the Heiss patent are different from those concerning the validity of the Frost patent. The respective claims for relief as to the two patents do not arise out of the same transactions and occurrences. The pleadings relating to the Heiss patent do not mention the Frost patent nor do the Frost patent pleadings refer in any way to the Heiss patent.

If there are any witnesses who might be called upon to testify with respect to both claims, it appears that the subject matter of their testimony will be quite different with respect to each claim and testimony given with respect to one claim would not be relevant with respect to the other. I find the defendant's argument that the two claims are "closely related" unpersuasive. There appears to be no overlap of operative facts necessary to consideration of the issues arising under one patent with those relating to the other.

Where, as here, an individual claim can be properly severed, there are then separate actions and the court may transfer one of such actions under § 1404 (a) while retaining jurisdiction over the other. E. g., Wyndham Associates v. Bintliff, supra; Henry I. Siegel Co. v. Koratron Co., Inc. 311 F.Supp. 697 (S.D. N.Y.1969).

In this case there are compelling reasons why defendant's Frost patent claims should be severed under Rule 21 and transferred to the District Court of Delaware under 28 US.C. § 1404(a).

There are two actions involving the Frost patent pending in the United States District Court for the District of Delaware. One of these is an action by General against Isocyanate Products, Inc. charging infringement. The second is a declaratory judgment action by Isocyanate against General challenging the va-

---

1. A previous motion by General to dismiss the second counterclaim on the grounds that it presented no justiciable controversy and that this court had no jurisdiction to entertain it, was denied by Judge Tyler who reserved the resolution of these questions until the trial.

lidity of the Frost patent. These actions have been consolidated. In addition, the Delaware District Court has enjoined prosecution of a third action involving the Frost patent by General against Murphy Body Works, Inc. in the Eastern District of North Carolina. Murphy, the defendant in that action, has been permitted to join the consolidated Delaware actions as a party. Thus, for all practical purposes, the third action brought in North Carolina has been transferred to Delaware. General Tire & Rubber Co. v. Isocyanate Products, Inc., 270 F.Supp. 868 (D.Del.1967), aff'd, 391 F.2d 936 (3rd Cir.), cert. denied, 393 U.S. 842, 89 S.Ct. 122, 21 L.Ed.2d 112 (1968).

The issues in all of the litigations involving the validity of the Frost patent are complex and difficult. Both pre-trial and trial of such issues will be time consuming. The issues of law and fact raised by Jefferson's Frost patent counterclaim are substantially the same as those before the Delaware District Court in the consolidated Frost patent actions there.

The numerous witnesses and hundreds of documents involved in the Frost patent litigation here and in Delaware appear to be largely the same. The witnesses who would be required to give testimony by deposition or at trial in the Delaware actions would be required to give substantially the same testimony in this District if the Jefferson Frost patent counterclaim was tried here. Under these circumstances there would be substantial duplication of testimony.

The documents involved in all the Frost patent litigations, which may exceed 2,000 in number, are largely the same. Pre-trial proceedings, including depositions, interrogatories and discovery and inspection, in all the cases would cover substantially the same ground.

Sound judicial administration requires that related cases be tried together wherever possible. General Tire & Rubber Co. v. Isocyanate Products, Inc., supra; Schlusselberg v. Werly, 274 F. Supp. 758 (S.D.N.Y.1967); Schneider v. Sears, 265 F.Supp. 257, 266–267 (S.D.N.Y.1967). This avoids unnecessary duplication of judicial time and effort and the possibility of inconsistent results.

Moreover, there are marked advantages to parties and witnesses in having closely related claims litigated in the same tribunal. Pre-trial discovery can be conducted more efficiently and duplication of time, effort and expense can be avoided. Witnesses, both on pre-trial and at trial, can be saved time, expense and inconvenience if this course is followed.

As Chief Judge Wright noted in General Tire & Rubber v. Isocyanate Products, Inc., supra, 270 F.Supp. at 871, the docket of the District Court in Delaware is practically current. Trial there could be had whenever the parties are ready. On the other hand, because of the substantial backlog of litigation in this District, trial here would necessarily be considerably delayed.

The claims as to the validity of the Frost patent asserted in Jefferson's counterclaim in this District could have been maintained in action by Jefferson against General in the District Court of Delaware. General has an agent for service of process in that District and Jefferson is a Delaware corporation. Thus, the claim to be transferred could have been brought in the Delaware District as § 1404(a) requires.

Jefferson's contention that it will suffer legal prejudice if its counterclaim is consolidated with the consolidated Delaware actions and its prediction that consolidation would be denied by the Delaware Court are wholly unpersuasive. As far as appears here, Jefferson has shown no potential prejudice which could result from the transfer of the action or its consolidation with the actions already pending in Delaware. While it is, of course, true that consolidation in Delaware is a matter for the Delaware District Court, in view of the consolidation which has already taken place there, Jefferson's prediction that consolidation

would not be permitted seems unwarranted. Moreover, if any inconvenience to Jefferson could result from the transfer, it would be negligible, at the worst.

▮ Thus, all of the relevant factors present here favor transfer. The benefits and advantages in terms of sound judicial administration, the convenience of witnesses and parties and the interest of justice are clear. For these reasons, Jefferson's second counterclaim will be severed. The counterclaim as so severed will thereafter constitute a separate action by Jefferson, as plaintiff, against General as defendant, and as so reconstituted will be transferred to the United States District Court for the District of Delaware.

### (2) The motion to stay the Heiss patent litigation in this Court.

In a pending action brought by Jefferson against Mobay Chemical Company in the Chancery Court of the State of Delaware in 1969, Jefferson asks a judgment declaring that its rights as assignee from Mobay of the Heiss patent remain unimpaired and restraining Mobay from asserting any rights to that patent. Mobay in turn takes the position that it is entitled to a reassignment of the Heiss patent by Jefferson.

▮ General contends that the litigation concerning the Heiss patent which remains in this Court should be stayed pending determination of the ownership of the Heiss patent in the Delaware Chancery Court. However, General has failed to make clear what effect the outcome of the litigation in the Delaware Chancery Court would have on the Heiss patent litigation here. Apparently, Jefferson still is the assignee of record of the Heiss patent and was the assignee during the period involved in the Heiss patent litigation in this District. If this be so, it appears that at least some of the issues in the Heiss patent litigation here would not be affected by the outcome of the case in the Delaware Chancery Court.

General has not shown sufficient to warrant the stay which it seeks and its motion for such a stay is denied.

Settle order on notice carrying out the decisions made in this opinion.

### On Rehearing
### MEMORANDUM

Defendant's motion for reargument is granted.

▮ In my view, plaintiff's motion before the Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407 to consolidate discovery proceedings in the numerous pending actions relating to the validity of the Frost patent is not inconsistent with nor does it supersede the plaintiff's motion before me under 28 U.S.C. § 1404(a) to transfer defendant's Frost patent counterclaim in this action to the District of Delaware. Sections 1404(a) and 1407 are not mutually exclusive and may properly be used in concert and to complement one another. In re Koratron, 302 F.Supp. 239 (J.P.M.L.1969); In re Grain Shipments, 300 F.Supp. 1402 (J.P.M.L.1969); Manual for Complex and Multidistrict Litigation, Section 5.32(2). Nor do I see any basis for defendant's claim that the making of the motion under Section 1407 before the Panel ousted this Court of jurisdiction to decide the Section 1404 (a) motion before it. See In re Mid-Air Collision Near Hendersonville, N. C., 297 F.Supp. 1039 (J.P.M.L. 1969).

My opinion of April 6, 1970 stated that the Frost patent pleadings did not refer in any way to the Heiss patent. That statement was not accurate in that the Heiss patent is the thirteenth reference to prior art listed in paragraph 13 of defendant's second counterclaim. Nevertheless, as I stated in my opinion:

"The Frost patent counterclaim involves a claim for relief independent of and separate and distinct from the complaint and counterclaim on the Heiss patent. The two patents do not appear to be related. While both are concerned with the broad field of poly-

urethane chemistry, the inventions, the dates of invention, the inventors, places of invention and the ownership are all different. The operative facts and the legal issues concerning the validity of the Heiss patent are different from those concerning the validity of the Frost patent. The respective claims for relief as to the two patents do not arise out of the same transactions and occurrences."

These and the other critical findings upon which I based my decision to sever and transfer are in no way impeached by anything which the defendant has presented. I see no reason to change my decision directing severance and transfer.

Defendant has shown nothing on this motion for reargument which would justify the transfer of the litigation relating to the Heiss patent to the Delaware Court, as it rather casually suggests. On reargument, I adhere to my decision of April 6, 1970 granting plaintiff's motion to sever the second counterclaim relating to the Frost patent and to transfer the second counterclaim as so severed to the District of Delaware and denying plaintiff's motion for a stay of the action relating to the Heiss patent.

I have this day signed the order presented by the plaintiff implementing that decision.