**UNITED STATES of America**
v.
**BUTKIN PRECISION MFG. CORP.**
**Civ. No. B–661.**

United States District Court,
D. Connecticut.
May 17, 1974.

Henry S. Cohn, Asst. U. S. Atty., Hartford, Conn., Jane Restani, Dept. of Justice, Washington, D. C., for plaintiff.

Paul V. McNamara, Bridgeport, Conn., for defendant.

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NEWMAN, District Judge.

Plaintiff moves for summary judgment to collect excessive profits that the Renegotiation Board ordered repaid pursuant to 50 U.S.C.App. § 1213. Jurisdiction is alleged under 50 U.S.C.App. § 1215(b)(3) and 28 U.S.C. § 1345.

Defendant opposes the motion on two grounds: first, that the Court of Claims has exclusive jurisdiction to enforce the Board's order as a result of defendant's petition for a *de novo* determination, 50 U.S.C.App. § 1218, or that it should be accorded primary jurisdiction as a matter of comity so long as the petition is pending. Second, that enforcement of the order by this Court prior to a *de novo* determination in the Court of Claims would deny constitutional rights to due process.

The Government is not seeking to prevent a *de novo* determination in the Court of Claims. It concedes that the judgment it wants entered here is a judgment entitling it to collect the excessive profits (less appropriate credit for taxes paid on such profits) without a determination by this Court that the excessive profits were correctly calculated. In effect, the Government wants to use the proceeding in this Court as a pre-judgment remedy—entitling it to obtain from defendant the funds in dispute subject to determination on the merits in the Court of Claims. In form, the action here is for a judgment, but vis-a-vis the Court of Claims action, this proceeding seeks a pre-judgment remedy.

Defendant might have stayed collection by posting sufficient bond pursuant to § 1218, but was allegedly "rendered indigent to the point that it was unable to procure the necessary monies" by a cutback in Government contracts. Granting summary judgment, defendant argues, would prevent it in effect from obtaining a hearing on the merits of its petition.

The jurisdiction question presented by this motion results from Congress' 1971 Amendment to the Renegotiation Act, transferring jurisdiction over petitions for *de novo* review of Board orders to the Court of Claims from the Tax Court. See Act of July 1, 1971, Pub.L. No. 92–41 §§ 2(b), 3(a), 85 Stat. 97, 98. Previously, proceedings for "redetermination" had been wholly separate and distinct from those involving "collection" or enforcement of Board orders. The former took place only in the Tax Court; the latter occurred in the United States District Courts, 50 U.S.C.App. § 1215(b)(3), and could be stayed only if sufficient bond were posted within ten days of filing a petition for review, 50 U.S.C.App. § 1218. At the time the Court of Claims became the redetermining court pursuant to the 1971 Amendment, however, it was already a collecting court because it had jurisdiction over counterclaims. 28 U.S.C. § 2508. The 1971 Amendment thereby had the effect of uniting the two functions for the first time in one forum, Sandnes' Sons, Inc. v. United States, 462 F.2d 1388, 1390, 199 Ct.Cl. 107 (1972). In the *de novo* proceeding brought by this defendant in the Court of Claims, the Government can counterclaim for the same judgment of collection that it seeks here.

The first question is whether Congress intended to grant the Court of Claims *exclusive* jurisdiction over such "collection" counterclaims. This Court cannot assume that Congress was unaware of the Court of Claims' existing power over counterclaims when it approved the 1971 transfer of power over petitions for *de novo* determination. On the other hand, if Congress intended to grant the Court of Claims exclusive aurisdiction, it almost certainly would have also amended § 1215(b)(3) to specify

that "appropriate courts" would no longer refer to United States District Courts, as that phrase had been interpreted throughout the Renegotiation Act's history.

■ Without clearer statutory guidance or evidence of Congressional intent, this Court cannot conclude that District Court jurisdiction was totally eliminated by the 1971 Amendment. But even if there is concurrent jurisdiction, approval of the 1971 Amendment, along with the frequently expressed dissatisfaction of federal courts with their rubber-stamp collection role, argue for according the Court of Claims primary jurisdiction as a matter of comity under the circumstances here.

The 1971 Amendment certainly evidences Congress' desire to unify in one court the functions of *de novo* review and enforcement of orders. Separation of those functions has always been anomalous, and federal courts have "balked at or complained of the ignominious role assigned them, of summarily enforcing administrative orders, on whose validity they were not allowed to pass." Sandnes' Sons, Inc. v. United States, supra, 462 F.2d at 1390; see United States v. Miller, 111 F.Supp. 368, 370 (E.D.Mich.1953); Marie & Alex Manoogian Fund v. United States, 212 F.2d 369, 370 (6th Cir. 1954); *cf.* United States v. Hopkins, 95 F.Supp. 14, 16–17 (D.Ohio 1951).

Their complaints acquire added force in light of recent successful due process challenges to other pre-judgment collection and attachment procedures, see, *e. g.,* Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). While the purposes and circumstances of those procedures are distinguishable from the ones involved here, and a different due process standard is traditionally applicable to techniques designed to safeguard government revenue, see Fuentes v. Shevin, *supra,* 407 U. S. at 91–92; Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 597, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); Sandnes' Sons, Inc. v. United States, *supra,* 462 F.2d at 1392, the vulnerability of pre-judgment procedures in other contexts indicates that defendant's constitutional challenge here is not frivolous.

Under certain limited circumstances, the Court of Claims has decided, a petitioner for *de novo* review should be afforded an opportunity to challenge the merits of the Board's order in spite of its failure to post bond in accordance with § 1218. Sandnes' Sons, Inc. v. United States, *supra,* 462 F.2d at 1393. In order to avoid an "unconstitutional result," the Court ruled that "an indigent corporation" should be granted a stay of collection without bond. Otherwise, the corporation would be defaulted, its "capacity . . . to litigate further" would be destroyed, and a "due process hearing on the merits" would be denied. *Ibid.* The Court emphasized that the Board makes no pretense of providing a due process hearing. None is required by statute, 50 U.S.C.App. § 1215(a), or by the Constitution, Lichter v. United States, 334 U.S. 742, 791–792, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948); Lykes Brothers Steamship Company v. United States, 459 F.2d 1393, 1400, 198 Ct.Cl. 312 (1972). The Board's purpose is not to furnish an impartial, objective determination, but rather to ferret out and recoup profiteers' gains, 50 U.S.C. App. § 1211.

Whether the rationale of *Sandnes' Sons* and other recent due process decisions requires that collection be stayed here without a bond is a question appropriate for the Court of Claims. The statute mandating bond, § 1218, is one that the Court of Claims is specifically authorized to enforce and construe. That court, deciding whether particular circumstances warrant staying collection without bond, is far more likely to achieve consistency than the numerous District Courts. Moreover, the Court of Claims is more familiar with the purposes of requiring bond in light of the

statute's overall objectives and operation.

■■ The particular factors to be weighed in deciding whether to stay collection—including, for example, the condition of the corporation, and the burdens imposed by the bond requirement—entail many of the same factual questions that must be resolved for purposes of determining the merits of the petition if plaintiff's motion is denied. Fragmenting the fact-finding would waste judicial resources, *cf.* General Tire & Rubber Company v. Isocyanate Products, Inc., 270 F.Supp. 868, 869 (D. Del.1967), aff'd, 391 F.2d 936 (3d Cir.), cert. denied, 393 U.S. 842, 89 S.Ct. 122, 21 L.Ed.2d 112 (1968). Deferring to the Court of Claims as a matter of comity not only saves such resources, but also serves the general rule that, as a matter of sound judicial administration, the first suit should have priority, absent a showing of balance of convenience in favor of the second action, William Gluckin & Company v. International Playtex Corporation, 407 F.2d 177, 178 (2d Cir. 1969); Tecon Engineers, Inc. v. United States, 343 F.2d 943, 946, 170 Ct.Cl. 389 (1965), cert. denied, 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966).

■ The Government contends that jurisdiction ought to be exercised by this Court because no effective collection can be achieved without a suit in a district court having jurisdiction over the defendant. This is so, the Government argues, because "the Court of Claims cannot enforce judgment by execution" and there is therefore "no practical reason for obtaining a judgment in the Court of Claims." While it is technically true that the Court of Claims cannot "enforce judgment by execution," it is not true that such a judgment is not worth obtaining, nor that suit in this Court is necessary. Section 2508 provides that any judgment rendered by the Court of Claims on a counterclaim can be filed in the clerk's office of any district court and "shall be enforceable

as other judgments." Thus, if the Government obtains a judgment on a counterclaim for collection in the Court of Claims, that judgment can be registered here, and execution can issue without the necessity for an independent suit. See 7 Moore's Federal Practice ¶ 69.03(3) at 69–14 (2d ed. 1973).

Accordingly, plaintiff's motion for summary judgment is denied, and the complaint is dismissed.