**SPENCER, WHITE & PRENTIS INCORPORATED OF CONNECTICUT,**
Plaintiff-Appellee,

v.

**PFIZER INCORPORATED, Defendant-Appellant.**

**No. 839, Docket 73–2810.**

United States Court of Appeals,
Second Circuit.

Argued April 5, 1974.

Decided June 3, 1974.

Edward L. Sadowsky, New York City, with whom Tenzer, Greenblatt, Fallon & Kaplan, New York City, were on the brief, for appellant.

Richard H. Tunstead, New York City, with whom Tunstead & Schnechter, New York City, were on the brief, for appellee.

Before HAYS and OAKES, Circuit Judges, and CHRISTENSEN,* Senior District Judge.

CHRISTENSEN, Senior District Judge:

This is an appeal from a summary judgment entered by the district court in favor of a contractor for the balance on a construction agreement. The stated ground was that the owner's counterclaims for damages suffered in the execution of the work by the contractor constituted "the only defense asserted by the defendants" but that such defense was without merit. As a part of the same order, the district court had "severed" plaintiff's claim from these counterclaims, presumably because the latter required separate future adjudication, upon a finding that "a severance will both serve the ends of justice and further an efficient disposition of the litigation." And the case comes to us without certification for an interlocutory appeal, or any express determination by the court below that there was no just reason for delay in the entry of a "final" judgment on plaintiff's claims.

We have looked into this tangle of Rules 21, 42(b), 54(b), and 56, Fed.R. Civ.P., and Rule 5(a), (b), Fed.R.App.P. and their overlay of 28 U.S.C. §§ 1291 and 1292(b) only so far as seems necessary to ascertain our lack of appellate jurisdiction—an obstacle which may prove of little surprise to anyone reading this synthesis of the record except possibly the parties,[1] but yet confirmed

* Of the District of Utah sitting by designation.

1. No notice was taken of any jurisdictional problem in oral argument. Appellant's brief contained the reference in passing that "since the District Court erroneously treated what should have been at best an interlocutory adjudication as a final judgment, as it clearly did in this case, an appeal will lie", citing Biggins v. Oltmer Iron Works, 154 F.2d 214 (7th Cir. 1946) [a case decided before a significant amendment to Rule 54(b) Fed.R. Civ.P. and one recently criticized by this court in Cinerama, Inc. v. Sweet Music,

S. A., 482 F.2d 66, 71 (2d Cir.)] and 6 Moore's Federal Practice (2d Ed.) ¶ 56.60[4] (citing Oltmer in a context not indicated by appellee is in the last few lines of its brief where it "agrees" that an appeal may be taken from the district court's finding that severance would both serve the ends of justice and further an efficient disposition of the litigation, and its direction for the entry of "judgment". Of course jurisdiction cannot be conferred by agreement; it is our duty to notice the absence of it even though the parties have not raised the question. United States for Use and Benefit of Charles R. Joyce & Son, Inc. v. F. A. Baehner, Inc.,

only after unraveling some interesting twists in the exercise of our jurisdiction to determine that we have no jurisdiction.[2]

The appellee-plaintiff, Spencer, White & Prentis Incorporated of Connecticut, was employed as contractor by appellant-defendant, Pfizer Incorporated, to install foundation caissons at Pfizer's plant at Groton, Connecticut. The written contract[3] between the parties provided that Spencer would be paid on a "cost plus fixed fee basis". The contract proper contained the following definition of cost:

"The cost includes labor, including job supervision and engineering staff, yard expense, insurance, welfare and pension funds, losses not covered by insurance . . . materials . . . and all incidental expense required for the work. . . ."

The "general conditions" attached to and "made a part of this contract with the same force and effect as if the same were set forth at length" provided among other things that "compliance by contractor with the foregoing requirements with respect to carrying insurance[4] shall not relieve the Contractor from liability under the indemnity provisions hereinafter stated."

On the last-mentioned subject, paragraph 9(i) of the General Conditions provided so far as material here that "Contractor assumes the entire responsibility and liability for and agrees to hold Owner harmless from any and all damage or injury of any kind or nature whatsoever . . . to all property . . . arising out of or occurring in connection with the execution of its Work hereunder and all damage . . . of whatsoever nature resulting from the performance of its Work . . . or resulting to the Work . . . shall be borne by Contractor and all Work hereunder shall be solely at its risk. . . ."

The contractor installed the caissons and brought suit for an unpaid contract balance of $59,912.50. The owner Pfizer in an amended answer and counterclaims admitted that the $59,912.50 had not been paid but alleged by way of defense and counterclaim that it was entitled to at least $61,000 from the contractor on the theory of absolute liability of the contractor by virtue of the last quoted provisions, or on an alternate theory of negligence, for damage which had been

---

309 F.2d 154 (2d Cir. 1962) ; Flegenheimer v. Manitoba Sugar Co., Ltd., 182 F.2d 742 (2d Cir. 1950) ; Audi Vision, Inc. v. RCA Mfg. Co., Inc., 136 F.2d 621 (2d Cir. 1943).

2. Rather than to remand summarily, we have recorded this process, among other reasons, so that certain misconceptions below may not persist or, indeed, be thought to have become implanted as the law of the case. We trust that this may not be considered, and we have endeavored to avoid, a gratuitous decision of issues beyond our jurisdiction ; e. g., the definitive and ultimate interpretation of the contract in question. *Cf.* Cram v. Sun Insurance Office, Ltd., 375 F. 2d 670 (4th Cir. 1967).

3. While the work was done prior to the time the written agreement between the parties was signed, the parties have not questioned here that the writing reflects the terms under which the work was accomplished, nor do we.

4. "9. Insurance. (a) Until completion and Final Payment provided for hereunder, Contractor and its Sub-Contractors shall procure and keep in force the following insurance coverages with limits in the respective amounts indicated." (Then follows a schedule of risks and amounts which includes as item (4), "Property Damage Liability Insurance and Completed Operations Insurance, including Contractor's Protective Liability Insurance and coverage for Explosion, Collapse and Underground Hazards" in the sum of one million dollars each accident and one million dollars in aggregate. A footnote reference stated that the Contractor's Protective Liability Insurance was intended to include "insurance against liability assumed under paragraphs nine (f) and nine (i) [of the General Conditions] to the extent covered by the Policy" which enigmatic qualification we do not find necessary to pursue except by keeping in mind this indication that the parties may have thought the insurance coverage might be narrower than plaintiff's liability under 9(i).)

caused in the execution of the work to an underground salt water line.

The contractor moved for severance of its unpaid balance claim from the counterclaims for damages, and for summary judgment on its claim. The district court granted the motion in all respects, and pursuant to direction in its memorandum and order a judgment in the sum of $59,912.50 was entered by the clerk in favor of the contractor and against the owner, which judgment later was amended to include interest pursuant to a supplemental order. The owner has appealed from this judgment as so amended, and states the issues to be determined upon this appeal as follows:

1. Does a cost plus fixed fee construction contract, which provides that the contractor shall be strictly responsible for any damage caused to property during the course of construction excuse the contractor from damage resulting from its own acts solely because "cost" is defined in the contract as including losses not covered by insurance?

2. Did the district court abuse its discretion by directing the entry of judgment on the complaint prior to the adjudication of the compulsory counterclaims?

The appellee in its counter-statement would have us resolve these issues by the proposition embraced in the lower court's memorandum that "any losses arising from Spencer's acts are either covered by insurance procured for Pfizer's benefit or payable by Pfizer as reimbursable items of cost under the contract."

■■■ We begin our consideration of jurisdiction with recognition that a claim or counterclaim properly severed from another by virtue of Rule 21[5] "may be . . . proceeded with separately";[6] that justification for severance is not confined to misjoinder of parties;[7] that the fact that a counterclaim is a compulsory one does not *per se* preclude its severance under the current rule;[8] that appeal from a judgment on a validly severed single claim may be timely taken as of right notwithstanding the pendency of the remaining claims or counterclaims,[9] and that other possible basis for appellate jurisdiction would have to be sought only if the severance

5. "Misjoinder and Non-Joinder of Parties "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."

6. Wyndham Associates v. Bintliff, 398 F.2d 614 (2d Cir.), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); Sporia v. Pennsylvania Greyhound Lines, Inc., 143 F.2d 105 (3d Cir. 1944); General Tire & Rubber Co. v. Jefferson Chemical Co., 50 F.R.D. 112 (S.D.N.Y.1970). *Cf.* First National Bank of Cincinnati v. Pepper, 454 F.2d 626, 635 (2d Cir. 1972). *Cf.* Garber v. Randell, 477 F.2d 711 (2d Cir. 1973).

7. Wyndham Associates v. Bintliff, *supra.* See 3A Moore's Federal Practice ¶ 21.-05(2).

8. Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956).

9. The dearth of authorities expressly making this point is explainable no doubt, by the unavoidable implicitness of the result in the very concept of severance under Rule 21. Use of the term "severance" to denote separation of trials under Rule 42(b), not resulting in discrete, separately appealable actions, sometimes masks the point. An attempt to articulate the distinction but with only general success is made in Lusk v. Pennzoil United, Inc., 56 F.R.D. 645, 646 (N.D.Miss.1972): " 'A separate trial' . . . . always results in a single judgment, while a 'severance' creates independent actions which may result in different judgments." Without specifically reaching the point, 3A Moore's Federal Practice § 21.05 [2] notes the "separate and distinct" conditions and consequences of the two rules, as well as their possible interplay with Rule 42(a) concerning consolidation. See also Garber v. Randell, 477 F.2d 711 (2d Cir. 1973), *supra*; Transmirra Prods. Corp. v. Monsanto Chem. Co., 27 F.R.D. 482 (S.D.N.Y. 1961).

constituted an excess or abuse of discretion on the part of a district court.[10]

Facially the court's order of severance in reliance upon Rule 21 is suspect when it is read with its grant also of summary judgment on plaintiff's claims, especially in light of the assigned reasons. While application of Rule 42(b)[11] involves primarily the consideration of convenience and fairness, that of Rule 21 also presupposes basic conditions of separability in law and logic. The terms of the court's memorandum and order negate the latter conditions and indicate that what it said in attempted justification for severance was self-defeating or at best would relate only to the matter of separate trials.[12] We therefore conclude that the "severance" was so transparently a confusion of Rule 21 with 42(b), or an attempt to separate an essentially unitary problem, that it should be disregarded out of hand as devoid on its face of any foundation for appellate jurisdiction or, at least, an abuse of discretion with the same result.[13]

This notwithstanding, we understand appellee to argue that the counterclaims, being patently without merit, may be disregarded along with, consequently, any abortive severance, to leave plaintiff's claim in substance unencumbered and final. Or, taking the court's memorandum supporting the attempted severance as the basis for the entry of a final judgment on one of multiple claims or counterclaims and treating the court's direction for the entry of "summary judgment" as a direction for the entry of "final judgment" pursuant to Rule 54(b), Fed.R.Civ.P.,[14] the argument appears to be that there still can be found compliant or *de facto* finality. To determine whether appellate jurisdiction thus can be rescued, the justification for and substance of the summary judgment must be examined in the conceded absence of any certification by the trial court for interlocutory appeal,[15] and in

---

10. *Cf.* Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956).

11. "(b) *Separate Trials.* The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim or third-party claim. . . ."

12. After holding that it had the power to sever plaintiff's claim and the counterclaims and that a severance "will both serve the ends of justice and further an efficient disposition of the litigation", the court stated: "The contract between the parties specifically provides that the plaintiff will be reimbursed for costs and it defines the term 'costs' to include both insurance and losses not covered by insurance. . . . The damage done to the water line is either covered by insurance or it is a loss not covered by insurance. It does not matter which it is, for in either case, it is a 'cost' for which plaintiff must be reimbursed under the contract. "Since the damage done to the water line is the only defense asserted by the defendants and since that defense is invalidated by the very terms of the contract, I find that plaintiff is entitled to summary judgment on its severed claim for $59,912.50."

13. *Cf.* Garber v. Randell, 477 F.2d 711 (2d Cir. 1973), particularly with reference to the unwarranted amalgamation of separate actions under the guise of "consolidation" for trial.

14. "Judgment upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

15. "1292(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which

view of the concept of finality[16] embraced in 28 U.S.C. § 1291.[17]

The district court held that since "the damage done to the water line is either covered by insurance or it is a loss not covered by insurance, and that in either event it was a cost for which the plaintiff was entitled to reimbursement under the contract" the damage done to the water line was thus invalidated as a defense by the very terms of the contract.

If paragraph 9(i) of the General Conditions[18] was not as a matter of law controlling[19] over the preceding more general reference to "cost,"[20] at least there would have been a material ambiguity or inconsistency not subject to resolution by summary judgment. The "damage . . . is either covered by insurance or it is a loss not covered by insurance" gambit[21] is simply too pat. Confessing in effect an ambiguity, the attempted avoidance on the ground of inescapable immateriality completely fails:[22]

While the meaning of an unambiguous contract is a question of law, the meaning of an ambiguous one presents a question of fact on which resort may be had to extrinsic aids of construction throwing light upon the intent of the parties.[23] The intent of the parties to

there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order. . . ."

16. "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States. . . ."

17. *Cf.* Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437–438, 76 S.Ct. 895, 100 L.Ed. 1297 (1956), *supra;* Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 453, 76 S.Ct. 904, 100 L.Ed. 1311 (1956), *supra,* it being indicated that the application of a rule of procedure constituting an abuse of discretion cannot afford appellate jurisdiction contrary to the finality requirement of § 1291.

18. See *supra,* p. 361.

19. We do not mean to indicate that this may not be the ultimate result; the point need not be reached in this exploration of jurisdiction.

20. See *supra,* p. 360. *Cf.* First Nat. Bank of N.Y. v. Bankers Trust Co., 151 Misc. 233, 271 N.Y.S. 191 (1934).

21. Appellee offers to sacrifice as the pawn an assumed alternate liability of some nonparty insurance company.

22. The insurance policy with conditions, exceptions, or limitations to be expected was not before the court. Even had it been established, the liabilities of the insurance company and that of the contractor would not be mutually exclusive, nor would there be any assurance when settlement would be made. The court's formula itself begged the central question by assuming that if the damage was not covered by insurance it necessarily would comprise a "cost" to be paid by the owner anyway and that the "cost" and "damage" referred to in the respective paragraphs necessarily related to the same thing. There is another provision of the contract which the district court seems to have overlooked completely: "The compliance by contractor with the foregoing requirements with respect to carrying insurance shall not relieve the Contractor from liability under the indemnity provisions hereinafter stated." 9(d) of General Conditions.

23. Appellee relies upon the rule "that ambiguous language in a contract is to be construed most strongly against the party who drew the contract or selected the language," 17A C.J.S. Contracts § 324, at 226 (appellant having prepared or at least submitted the form of written contract used). However this rule is not helpful in resolving the difficulty. Appellee's construction would require disregarding express language in the contract and would violate the more fundamental rule of construction that "a contract must be construed as a whole and, whenever possible, effect will be given to all of its parts." Furthermore, it would not foreclose the use of parol evidence to resolve the ambiguity. Union Ins. Soc. of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 951 (2d Cir. 1965).

an ambiguous contract is a question of fact which cannot be resolved on summary judgment.[24] It is true that the amount due on the contract independent of the counterclaims was not disputed. The amount for which plaintiff was entitled to judgment, however, was disputed and depended upon contractual provisions which, if not supporting the counterclaims as a matter of law, were ambiguous as a matter of fact.

What we have said about the impropriety of granting summary judgment in favor of plaintiff-appellee confirms the inseparable relationship between the counterclaims and plaintiff's claim, and further demonstrates the invalidity of the order of severance.[25]

We reject appellee's contention that the district court's statement of reasons for granting the purported severance, coupled with its direction that summary judgment be entered, should be construed as compliance with the requirements of Rule 54(b). However broadly interpreted there was no direction of "final judgment" upon "an express determination that there is no just reason for delay." Moreover, because the contested issues of the claim and the counterclaim were essentially the same, it is doubtful that any purported certification pursuant to Rule 54(b) could be valid. There is a certain implausibility in a white blackbird, a two-year-old yearling, or separated inseparables.[26]

In Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956), it was held that amended Rule 54(b) does not constitute an unauthorized extension of 28 U.S.C. § 1291, since the District Court cannot, in an exercise of its discretion, treat as "final" that which is not "final" within the meaning of § 1291, and any abuse of its discretion would be reviewable by the court of appeals. Within the principle of that case we hold that the granting of the summary judgment, any attempt to make that judgment final for the purpose of appeal, and the purported severance of the counterclaims, amounted at least to abuses of discretion, if not to action outside the powers of the district court. Appellate jurisdiction cannot be so manipulated or controlled through misapplication of rules of procedure in derogation of the finality requirements of 28 U.S.C. § 1291, *supra*.

For the reasons above stated this appeal *sua sponte* is dismissed.

24. Painton & Company v. Bourns, Inc., 442 F.2d 216 (2d Cir. 1971); Union Ins. Soc. of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946 (2d Cir. 1965), *supra*; Cram v. Sun Insurance Office, Ltd., 375 F.2d 670, 674 (4th Cir. 1967). See also Evensen v. Pubco Petroleum Corp., 274 F.2d 866 (10th Cir. 1960).

25. See Western Geophysical Co. of Am., Inc. v. Bold Associates, Inc., 463 F.2d 101 (2d Cir.), cert. denied, 409 U.S. 1040, 93 S.Ct. 523, 34 L.Ed.2d 489 (1972); Biggins v. Oltmer Iron Works, 154 F.2d 214 (7th Cir. 1946); Audi Vision Inc. v. RCA Mfg. Co., Inc., 136 F.2d 621, 147 A.L.R. 574 (2d Cir. 1943); Gaetano Marzotto & Figli, S.P.A. v. G. A. Vedovi & Co., 28 F.R.D. 320 (S.D.N.Y.1961).

26. "In fine, the trial court cannot by a 54(b) certificate make final and appealable a ruling that is not final and appealable within the meaning of 28 U.S.C. § 1291." 6 Moore's Federal Practice ¶ 54.30 [1]. See also Painton & Co. v. Bourns, Inc., 442 F.2d 216 (2d Cir. 1971); Cott Beverage Corp. v. Canada Dry Ginger Ale, Inc., 243 F.2d 795 (2d Cir. 1957); Zwack v. Kraus Bros. & Co., 237 F.2d 255, 262 (2d Cir. 1956).

With a significantly more valid basis for separation, this court in International Terminal Op. Co. v. Waterman S.S. Co., 272 F.2d 15, 16, n. 2 (2d Cir. 1959), observed in accepting jurisdiction that "[t]he entry of final judgment on plaintiff's claim for reimbursement, while postponing adjudication of the counterclaim, would seem to approach the limits of a district judge's discretion."