**Verlon HILBURN et al., Plaintiffs-Appellees,**

v.

**Earl L. BUTZ, Secretary of Agriculture and The United States Department of Agriculture, Defendants-Appellants.**

**No. 71-2767.**

United States Court of Appeals, Fifth Circuit.

June 2, 1972.

Rehearing Denied June 22, 1972.

Supplemental Order Aug. 30, 1972.

Eldon B. Mahon, U. S. Atty., William L. Johnson, Jr., Asst. U. S. Atty., Ft. Worth, Tex., Walter H. Fleischer, Anthony J. Steinmeyer, Dept. of Justice, Washington, D. C., L. Patrick Gray, III, Asst. Atty. Gen., for defendants-appellants.

Ernest L. Langley, Witherspoon, Aikin, Thomas & Langley, Hereford, Tex., for plaintiffs-appellees.

Before WISDOM, GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The Secretary of Agriculture appeals from an order mandating him to

pay certain sums to the Hilburn family. These monies were concededly due them under various Department of Agriculture programs for the years 1968 through 1970; however, the Secretary had determined administratively, after an extensive investigation, that he had overpaid the Hilburns, under these same programs for the years 1964 through 1967, and that the monies owed to the Hilburns should be applied to offset such overpayments. Finding that the Secretary had a right to withhold current funds in sums equal to the amounts administratively determined to have been overpaid in prior years, at least until such time as the issues relating to these overpayments have been judicially determined, we reverse.

When the Hilburns filed this mandamus action [1] to require the Secretary to pay over the asserted offsets, the Secretary counterclaimed seeking a judicial declaration of the Hilburns' liability for the alleged overpayments. The district court severed the counterclaim—which still awaits the jury trial determination demanded by the Hilburns—and after a court hearing granted mandamus relief. The court held (1) that the Secretary's procedures for assessing the validity and amount of the alleged overpayments were unfair and fundamentally lacking in procedural due process; (2) that certain Department of Agriculture regulations relied upon by the Secretary were not applicable in the present case, and, even if they were, the Secretary did not follow them; and (3) that the Administrative Procedure Act, 5 U.S.C.A. § 500 et seq. (1967) (APA), governed the present administrative procedures, and that the Secretary had failed to conform to its dictates. Based on these determinations, the trial court concluded that since the alleged overpayments had been illegally determined, the Secretary had no right of set-off. Mandamus was therefore, held to be the appropriate remedy for requiring the return of the withheld funds.

It is undisputed that the Hilburns became entitled to definite sums of money under Departmental programs for the years 1968 through 1970. Further, the right of the Secretary to withhold sums payable to a debtor as a set-off against any indebtedness owed to the Secretary is not contested as an abstract principle of law. The issues are focused upon the methods utilized by the Secretary in determining that the Hilburns were liable for alleged program overpayments in the 1964–1967 years. We look first to the Department's regulations, which we determine are fully applicable to this case. 7 CFR § 13.1 et seq. (1971) provide that set-offs may be effected in circumstances such as are present here, but do not specify any procedure to determine the existence of an indebtedness to the Government. 7 CFR § 780.1 et seq. (1971) afford administrative appeal rights. Hearings and initial determinations at the local and state level are not required. 7 CFR § 701.45 (1971). The district court apparently interpreted the regulations to require that a hearing be held at some level. However, a study of the regulations indicates that the invocation of even an "informal hearing" is completely discretionary with the Secretary.

The Hilburns unleash their most vigorous attack upon the alleged invalidity of the regulations by asserting that they fail to meet minimum standards of procedural due process. In the alternative, the Hilburns argue that even if the regulations are facially valid, then those procedures adopted by the Secretary in this case to effectuate those regulations denied them procedural due process. Finally, the Hilburns contend that the provisions of the Administrative Procedures Act, 5 U.S.C.A. § 500 et seq., govern the type of proceedings in question here. With respect to this latter conten-

---

1. "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C.A. § 1361 (Supp.1972).

tion, however, both parties concede that the APA is applicable only if due process requires that a hearing, with its concomitant procedural rights, be held. This is so because no hearing is otherwise required by statute. 5 U.S.C.A. § 554 (1967).

It is unnecessary to venture into the nuances of the Hilburns' arguments on this point for all essential due process protections will be accorded to them by the jury trial to be held on the Government's counterclaim. 1 Davis, Administrative Law Treatise § 7.10 (1958). The district court has made it plain that it will conduct a trial on the merits of the counterclaim with full judicial procedural protections, at which time the Hilburns will be able to present every contention relevant to their claim that they were not overpaid.[2] Assuming they win on the counterclaim, the only prejudice which the Hilburns will suffer under this course is the termination of their rights to later year payments during the litigation process.

In this latter context, we must determine if the ramifications of Goldberg v. Kelly, 597 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) require a pretermination hearing. We think not. The result in Goldberg v. Kelly was based on a judicial notice of the fact that welfare recipients as a class would be deprived of their very means of existence while awaiting the outcome of a post-termination hearing. In turn, those recipients' necessary search for daily subsistence would adversely affect their ability to seek redress from the welfare bureaucracy. No evidence of any such dire consequences was adduced in this case. There is every reason to believe that farmers in general, and the Hilburns in particular, will be fiscally and physically able to continue farming while awaiting the completion of administrative and legal processes. We can judicially notice no comparable impairment in their ability to seek redress.

We conclude that the district court erred in granting mandamus relief. The validity of the Secretary's judgment that the Hilburns have been overpaid is still to be adjudicated, and, of course, we intimate no opinion as to that question.[3, 4] The judgment of the district court is

Reversed.

## ON PETITION FOR REHEARING

### PER CURIAM:

It is ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied.

### Supplemental Order

### BY THE COURT:

Subsequent to our opinion of June 2, 1972 and too late to be included in briefing on rehearing, the Supreme Court, on June 12, 1972, handed down its decision in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). After the court *sua sponte* called for and considered additional briefing on the impact of that decision upon our prior opinion, the court has determined to adhere to its opinion of June 2, 1972. Pursuant to the provisions of Local Rule 15, the mandate of this court in this cause is recalled and the date of this court's final judgment on rehearing is amended to the date of this order. The mandate shall reissue immediately.

2. We intimate no opinion as to the propriety of such a full scale trial in an otherwise similar case where the Secretary has accorded the "informal hearing" provided for by 7 CFR 780.8 (1971).

3. Both parties concede that the Hilburns could have brought a Tucker Act claim. *See* 28 U.S.C.A. § 1346(a) (2) (Supp. 1972).

4. We likewise intimate no opinion as to the availability of judicial relief when the Secretary fails to file a counterclaim to a plaintiff's claim that the Secretary's procedures for ascertaining the existence of a debt owed are constitutionally deficient.