543 F.2d 14
 20 UCC Rep.Serv. 965
 Glen HEBEL and Eldon Wiemkin, Individually and d/b/a Walnut
Auction Sales, Plaintiffs-Appellees,
v.
Donald A. EBERSOLE et al., Defendants-Appellees,
and
First Security National Bank of Beaumont, Texas, Executor of
the Last Will of W. P. H. McFaddin, Jr., Deceased,
and Joseph Ault, Defendants-Appellants.
 No. 74-1939.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 31, 1975.
Decided Sept. 2, 1976.
Rehearing Denied Sept. 22, 1976.
 
 Woodruff A. Burt, Freeport, Ill., Louis V. Nelson, Beaumont, Tex., Mason Bull, Morrison, Ill., Owen Rall, Chicago, Ill., for defendants-appellants.
 Thomas Kavadas, Jr., Sterling, Ill., for Paul Saunders, Drexel Conley and Eric Barber, individully and doing business as S & C Cattle Co.
 Before FAIRCHILD, Chief Judge, and CUMMINGS and SPRECHER, Circuit Judges.
 FAIRCHILD, Chief Judge.
 
 
 1
 The principal question before us in this interpleader case is whether a holder in due course of a check on which payment has been stopped has a claim to a fund deposited in court by the drawer of the check superior to any unsecured claim of cattle owners for the sale of whose cattle the check was originally issued to another. The district court held that the rights of the holder in due course were superior to those of the cattle owners. We affirm.
 
 
 2
 Hebel and Wiemkin, individually and doing business as Walnut Auction Sales (hereafter collectively designated "Walnut"), deposited a fund in court and filed a complaint in interpleader against Ebersole and Nicholson (hereafter "Ebersole"); Central National Bank of Sterling, Illinois; Saunders, Conley, and Barber (hereafter "S & C Cattle Co."); First Security National Bank of Beaumont, Texas, as executor of the McFaddin estate (hereafter "McFaddin Estate"); and Ault. Depositing another fund, Central National Bank filed a separate interpleader action joining the other defendants in the original action. The interpleader actions were consolidated, and Central National Bank was subsequently dismissed as a party.
 
 
 3
 The defendants-claimants answered and asserted various cross-complaints and counterclaims. In particular, S & C Cattle Co. sought recovery in a separate counterclaim as a holder in due course of a check issued by Walnut, and McFaddin alleged a separate claim against Walnut and Ebersole for conversion. Each party also asserted these same theories as bases for recovery of a portion or all of the funds in the interpleader action.
 
 
 4
 Events leading up to this lawsuit may be briefly summarized. On April 9, 1973, Ebersole sold approximately 661 head of cattle at a consignment sale conducted by Walnut. These cattle came from four sources. The McFaddin Estate supplied approximately 545 head, which were purchased by Ebersole on March 30, 1973 for $126,373.40, $5,000.00 was paid as a downpayment, and Ebersole gave three checks for the remainder. All three checks were dishonored when presented for payment, either due to "Uncollected Funds" or "Insufficient Funds."
 
 
 5
 Ault supplied 38 head of cattle to Ebersole for $12,345.22, and Ebersole agreed to send a check for that amount as soon as Ebersole received the cattle and the cows passed a pregnancy test. The checks were never sent.
 
 
 6
 S & C Cattle Co. supplied 13 head of cattle for which it apparently was not paid, and Carpentier (not a party in this suit) supplied 67 head for which he received full payment from Ebersole.
 
 
 7
 All the cattle, approximately 661 head, were sold at auction by Walnut on April 9, 1973, grossing $173,330.07. Walnut deducted its expenses and a commission of $5,040.94, and remitted the balance of $168,259.13 to the consignor Ebersole. This balance was paid by two checks, one for $121,737.53 and the other for $46,521.60, both drawn on Walnut's "Custodial Account for Shippers' Proceeds."
 
 
 8
 Ebersole deposited the $46,521.60 check in its account in the Central National Bank of Sterling. The $39,165.37 deposited into court by Central National Bank represents the remaining balance of this Ebersole account.
 
 
 9
 Ebersole endorsed the Walnut check of $121,737.53 to S & C Cattle Co. on April 9, 1973, the same day the cattle were sold, in partial payment of a debt which then amounted to $203,020.95 for cattle sold to Ebersole at various times between March 4 and April 3, 1973.
 
 
 10
 Shortly after April 9, 1973, Walnut was informed that Ebersole had not paid for the McFaddin Estate and Ault cattle. On April 13, 1973 Walnut stopped payment on the larger check it had issued to Ebersole, and the stop payment order was honored when S & C Cattle Co. presented the check for payment. Walnut then commenced this interpleader action, and deposited $121,737.53, the amount of the check, into the Registry of the Court.
 
 
 11
 Jurisdiction in the district court was based on interpleader, 28 U.S.C. § 1335. See also 28 U.S.C. § 1332. State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530-31, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). An initial question that we must dispose of is the matter of our own jurisdiction. Pursuant to the parties' stipulation, the district court heard the claims for future resolution. After trial the court entered a judgment distributing the interpleaded funds. The judgment contained nothing to indicate it was not final, and the district court was not asked to and did not make an express determination that there is no just reason for delay and that final judgment be entered. This would be required by Rule 54(b), Fed.R.Civ.P.[1] for a final judgment disposing of fewer than all the claims in the action.
 
 
 12
 The record leaves some doubt whether the remaining claims had been severed pursuant to Rule 21 or merely set aside for separate trials under Rule 42(b), Fed.R.Civ.P. At argument, appellant contended that the claims were severed under Rule 21 so as to create separate actions that may result in final and appealable judgments regardless of the pendency of other claims. If appellant's characterization of the district court's pretrial order is correct, we need not concern ourselves with the applicability of Rule 54(b). See Spencer, White & Prentis, Inc. of Conn. v. Pfizer, Inc., 498 F.2d 358, 361 (2d Cir. 1974). If, on the other hand, the district court intended to segregate the claims for separate trials pursuant to Rule 42(b), the interpleader judgment would have had to have been entered in accordance with Rule 54(b) to support appellate jurisdiction, Rule 13(i), Fed.R.Civ.P. See Southern Parkway Corp. v. Lakewood Park Corp., 106 U.S.App.D.C. 372, 273 F.2d 107 (1959).
 
 
 13
 The "severance" order[2] reads in pertinent part: ". . . it is further stipulated and agreed that the interpleader action would be first heard by the court and that all other counterclaims and cross-complaints would be severed therefrom and heard subsequent thereto, and the time to answer said cross-complaints and counterclaims was extended until further order of the court. . . ."
 
 
 14
 Use of the term "severed" suggests that the initiation of separate actions under Rule 21 was intended, although the term "severance" has been used loosely in the past to refer to separation of issues for trial under Rule 42(b). Spencer, White & Prentis, Inc. of Conn. v. Pfizer, Inc., supra, at 361, n. 9. The fact that the interpleader was disposed of in the form of a judgment is at least consistent with the view that real severance had been accomplished. Moreover, the fact that interpleader accomplishes a determination of rights in and actual distribution of a fund in the custody of the court, while the other claims result only in determinations as to liability may well have been considered a reason for effecting a real severance. That Rule 21 severance was intended, however, does not end our inquiry. The district court's discretion in severing claims under Rule 21 may not be abused ". . . to separate an essentially unitary problem. . . ." Spencer, supra, 498 F.2d at 362.
 
 
 15
 We conclude that the district court did not abuse its discretion in severing the counterclaims in this case for later resolution. The dispute over the fund paid into court is logically separable from the various counterclaims in tort and contract asserted by the defendants in this case. Thus, we hold that the district court did sever the claims into separate actions and that its judgment disposing of the fund paid into court was final and properly appealable.
 
 
 16
 We next consider sua sponte the question of the district court's jurisdiction, that is, whether this is properly an interpleader case, and conclude that it was.
 
 
 17
 S & C Cattle Co., whom the district court found to be a holder in due course of the check, has an action against the drawer Walnut on the check, as if it were a promissory note. Ill.Rev.Stat. Chp. 26, §§ 3-413, 4-403, First Nat'l Bank v. Bauer Poultry Corp., 345 Ill.App. 315, 103 N.E.2d 160 (2d Dist. 1952). That action would establish personal liability of Walnut. McFaddin Estate's claims against Walnut are based in tort for conversion of the cattle, and in what McFaddin variously describes as a constructive trust or an equitable lien on the proceeds generated by the cattle. The claim in tort was also a claim of personal liability of Walnut.
 
 
 18
 That independent stakeholder liability is asserted, however, need not vitiate a suit in interpleader as long as the necessary adversity between the interpleaded parties exists in some fashion. Royal School Laboratories, Inc. v. Town of Watertown, 358 F.2d 813, 815 (2d Cir. 1966); 3A J. Moore, Federal Practice P 22.08(1) et seq., P 22.11(3). This adversity usually is based on the risk of double payment of a single liability. Royal School Laboratories, Inc., supra, 358 F.2d at 815.[3]
 
 
 19
 In the case before us, the requisite adversity exists between McFaddin Estate's and S & C Cattle Co.'s conflicting claims to the Walnut check. As we see it, Walnut had an obligation to pay Ebersole for the cattle. To pay it, Walnut issued its check to Ebersole. When it appeared that it had not, or may not have, gotten title from Ebersole, Walnut stopped payment, but as stated above, its check then became in substance a note.
 
 
 20
 S & C Cattle Co. claimed as an assignee of the "note." McFaddin claimed the note as proceeds of the McFaddin cattle, for which it had not been paid. Had the note remained in the hands of Ebersole, or if the assignee had been charged with notice of the circumstances, McFaddin would have had a claim, equitable in nature, to the check (note) in the hands of Ebersole or Ebersole's assignee with notice. There was sufficient adversity so that interpleader to settle who should receive payment on the note was proper.
 
 
 21
 As far as the merits of the suit are concerned, we affirm the holding of the district court. As a holder in due course, S & C Cattle Co. has a claim against Walnut, the drawer of the check, free of any defense that might have been interposed against Ebersole. Ill.Rev.Stat. Chp. 26, §§ 3-305, 3-413, 4-403, First Nat'l Bank v. Bauer Poultry Corp., 345 Ill.App. 315, 103 N.E.2d 160 (2d Dist. 1952). Although it is true that the check was not originally an assignment of any particular funds, Leavitt v. Charles R. Hearn, Inc., 19 Ill.App.3d 980, 312 N.E.2d 806 (1st Dist. 1974), the fund paid into court in this case represents Walnut's liability on the check, and the real contest between McFaddin and S & C Cattle Co. in this case is over entitlement to the check. Since that contest must be resolved in S & C Cattle Co.'s favor because it is a holder in due course, the fund representing Walnut's liability on the check must also go to it.
 
 
 22
 Finally, we affirm the district court's distribution of the $39,165.37, paid into court by Central National Bank on a ratable basis among the three claimants according to the amount of their respective claims against Ebersole.
 
 
 23
 Appellants devote little of their brief to this issue, contending only that the pro rata distribution of the fund was inequitable because the extent of Ebersole's liability to general unsecured creditors had not been determined in the interpleader action. This argument misconceives the purpose of interpleader. The district court's task was to determine rights to a specific fund, not to determine the sum total of Ebersole's liabilities. The case at bar involves neither secured obligations nor a proceeding in bankruptcy. The parties' claims to the fund are of the same nature, and we approve the district court's pro rata distribution.
 
 
 24
 We emphasize in conclusion that while any further claim of S & C Cattle Co. on the check must necessarily be extinguished by this judgment, we express no opinion on the merits of any other severed claim, such as McFaddin's claim for conversion, which is unaffected by the result here because based on a theory of personal liability unrelated to liability on the check.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 Ault and McFaddin Estate appeal jointly from the district court order in accordance with Rule 3, Federal Rules of Appellate Procedure
 
 
 [2]
 The severance was in fact ordered by Magistrate Robert J. French in response to oral stipulations of the parties. The district court in its order of September 9, 1974 impliedly ratified this severance, so we treat it as a severance order of the district court
 
 
 [3]
 Adversity may also exist if the various claims against the stakeholder, while not theoretically mutually exclusive, in the aggregate exceed the limits on the stakeholder's liability, Pan American Fire & Casualty Co. v. Revere, 188 F.Supp. 474 (E.D.La.1960). This kind of adversity does not appear in the case before us