UNITED STATES of America,
Plaintiff-Appellant,

v.

Alvin O'NEIL and Thurston O'Neil,
Defendants-Appellees.

UNITED STATES of America,
Plaintiff-Appellant,

v.

Charles MEDLIN, B.A. McFarland and
B.E. McFarland, Defendants-Appellees.

UNITED STATES of America,
Plaintiff-Appellant,

v.

DOKO FARMS, a partnership, James Por-
ter, Allison V. Barnett, L.D. Smith and
William T. Curry, Defendants-Appellees.

UNITED STATES of America,
Plaintiff-Appellant,

v.

Paul MORGAN, P & B Morgan Trust,
Morgan Farms, Inc. and Wayne
Greaves, Defendants-Appellees.

Nos. 81–1541 to 81–1544.

United States Court of Appeals,
Fifth Circuit.

July 11, 1983.

Judith E. Rabinowitz, Marc Richman, Civil Div., Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Renner & Snell and Robert B. Snell, Lamesa, Tex., for defendants-appellees in Nos. 1541 and 1544.

Huffaker & Green, Gerald Huffaker, Tahoka, Tex., for defendants-appellees in No. 81–1542.

Crenshaw, Dupree & Milam, James H. Milam, Cecil Kuhne, Lubbock, Tex., for defendants-appellees in Nos. 1543 and 1544.

John L. Shepherd, Seminole, Tex., for Wayne Greaves.

Before THORNBERRY, GEE and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

In this appeal we consider procedural and jurisdictional issues initially arising out of four suits brought by the United States Department of Agriculture ("USDA") against the appellees to recover alleged overpayments made to them under the Upland Cotton Price Support Program, 7 U.S.C. § 1444(e). The issues before us are (1) whether the government has made a timely appeal to this Court in its suits against appellees, (2) whether the district court abused its discretion in denying the government's Fed.R.Civ.P. 60(b) motions for relief from the court's judgments of April 3, 1981 in those cases, and (3) whether the district court erred in granting summary judgment and affirmative relief to the appellees in the severed suits on their counterclaims against the government. For the reasons stated below, we hold the government's appeal was untimely as respects its suits against appellees, affirm the district court's denial of the Rule 60(b) motions, and reverse the summary judgment granted the appellees in the severed suits on their counterclaims against the government.

I.

FACTUAL AND PROCEDURAL BACKGROUND

The government brought these cases (the "O'Neil" cases) along with seven others, recently decided by us under the style of

*United States v. Batson, et al.,* 706 F.2d 657 (5th Cir.1983) (the "Batson" cases). The general factual background of each of these O'Neil cases and of the seven Batson cases is basically similar and is set out in detail in the *Batson* opinion. Since procedural issues are controlling in the O'Neil cases considered here, we will only generally outline the background facts.

The appellees were participants in the Upland Cotton Price Support Program in Gaines County, Texas. Under this program the USDA was authorized to make loans and subsidy payments to cotton producers through the Commodity Credit Corporation and to require the "set aside" of cropland, if necessary, to avoid excessive supplies of cotton. 7 U.S.C. § 1444(e). The program was administered locally by the County Committees of the Agricultural Stabilization and Conservation Service ("ASCS") within the USDA. 7 C.F.R. § 718.4 (1974). In 1973 the appellees, as participants in the program, were eligible for subsidy payments of fifteen cents per pound of cotton. This subsidy was based upon the number of cotton allotments owned or leased and the "average yield" of those allotments in pounds per acre. 7 C.F.R. § 722.812.

In the spring of 1973 the USDA began investigating the cotton payments in Gaines County, which in 1972 had been abnormally high, about five times the level experienced in other counties. It suspected that cotton allotments or their yield figures were being manipulated to inflate payments in violation of program regulations. In November 1973, as a result of the investigation, the USDA suspended the members of the Gaines County ASCS Committee, who were responsible for administering and enforcing the regulations governing the upland cotton program, and sent Clifton Adams, Acting Assistant to the ASCS Deputy Administrator, from the ASCS Washington, D.C. office to assume the County Committee's functions.

Adams subsequently rendered "determinations" against certain of the participants in the Gaines County program, including the appellees, finding that they had violated

program regulations and requiring refunds of all payments received in connection with the program. Adams found that the appellees in some cases had adopted a "scheme or device" to defeat the purpose of the upland cotton program by manipulating transfers of their allotments and allotment yields in violation of 7 C.F.R. § 722.817(b) (1974) and in others had avoided payment limitations in violation of 7 C.F.R. Part 795. The appellees maintained that all of their transfers had been in accordance with the regulations. Some also claimed they had not, or had not directly, received program payments. As required by program regulations, 7 C.F.R. Part 780, Adams held hearings and subsequently issued "redeterminations," which affirmed his original findings. The appellees then took appeals, also provided for by the program regulations, to the State ASCS Committee and then to a USDA hearing officer in Washington, D.C. Adams' "redeterminations" were affirmed at each of these levels. Similar administrative determinations and proceedings were taken respecting the various parties involved in the Batson cases.

In June and July 1979 the government filed several suits in federal district court for the refunds ordered by these administrative determinations. The four sets of appellees in the present appeals counterclaimed in the respective suits against them for the damages they had suffered from having been placed on the Federal Debt Register because of the disputed refunds.[1] All parties in each of the suits moved for summary judgment, and on April 3, 1981 the district court granted the defendants' motions in each of the four O'Neil cases, and in each of the seven Batson cases which were also before it. It included in the separate judgments issued in each of the four O'Neil cases the statement that *"[t]he defendants' counterclaim against the plaintiff is severed from the cause of action alleged by plaintiff and will be tried separately and at a later date."*

The government filed a timely appeal in each of the seven Batson cases on May 29, 1981, but took no action with respect to appeal of any of the O'Neil cases. On September 15, 1981 the district court, in response to motions filed by appellees in the severed cases during August 1981, ruled in a "Memorandum and Order" that the April 3, 1981 judgments in the original four O'Neil cases had become final at the expiration of the sixty-day appeal period, and rendered judgments against the government in the severed cases dealing with the counterclaims of these appellees. It stated that the April 3 judgments became final notwithstanding the unresolved counterclaims because those claims had been severed under Fed.R.Civ.P. 21, and were thus no longer a part of the same suits.

On October 27, 1981 the government filed in each of the original O'Neil cases a Rule 60(b) motion for relief from the April 3, 1981 judgment, alleging a good-faith belief that it had not been a final, appealable order because of the pending counterclaims. The district court denied each of these motions on November 2, 1981, holding that "a Rule 60(b) motion may not substitute for a timely appeal," and that "an attorney's misunderstanding of the law is not the type of mistake or excusable neglect contemplated by Rule 60(b)."

In November 1981 the government took timely appeal from the judgments entered, pursuant to the September 15, 1981 "Memorandum and Order," in the severed counterclaim suits and from the district court's November 2, 1981 denial of its Rule 60(b) motions.

On appeal the government levels three attacks against the district court's actions in these O'Neil cases. First, it argues that the district court's severance order was improper. Second, it argues that the district court abused its discretion in denying the government's Rule 60(b) motions. Finally, it argues with respect to the judgments in

---

1. Individuals listed on the Federal Debt Register were not barred from participating in federal agricultural programs, but could receive no loans or subsidies under them until their names were removed from the list.

The counterclaims, for the most part, sought (1) the removal of the appellees' names from the Register, (2) the release of money withheld, and (3) the return of cancelled cotton allotments.

the severed counterclaim suits that the Tucker Act and sovereign immunity preclude affirmative relief against the United States in those cases.

## II.

## THE LAW

### A. THE RULE 21 SEVERANCE.

1. The Intent of the District Court in its April 3, 1981 Judgments.

■ Although the government on appeal does not contest the district court's labeling of each of the four April 3 judgments as ordering a "severance," [2] we examine this characterization because of the important consequences that flow from it. As stated, each of the district court's April 3, 1981 judgments in the original four O'Neil cases contained the following sentence: "The defendants' counterclaim against the plaintiff is severed from the cause of action alleged by plaintiff and will be tried separately and at a later date." By its terms this order *"severed"* the appellees' counterclaims from the government's *"cause of action,"* which clearly suggests that the district court was invoking Rule 21. Courts and commentators have noted that "sever" and "severance" are sometimes used to denote the separation of trials under Fed.R.Civ.P. 42(b), which confuses the important differences between the effects of Rule 21 and Rule 42(b). *Spencer, White & Prentis, Inc. v. Pfizer, Inc.,* 498 F.2d 358, 361 (2d Cir. 1974); *Hebel v. Ebersole,* 543 F.2d 14, 17 (7th Cir.1976); 3A Moore's Federal Practice ¶ 21.05[2] n. 44 at 21–50. However, the fact that the court's order "severed" the appel-

lees' counterclaims "from the cause of action alleged by plaintiff" should have eliminated such confusion because the language used does *more* than order a separate trial. "The defendants' counterclaim is severed ... *and* will be tried separately and at a later date." (Emphasis added.)

Arguments by the government that it was somehow misled with respect to the intended effects of the court's order by the form or context in which it appeared are not well taken. On April 3, 1981 the district court entered a single "Memorandum and Order," eight pages long, applicable to the seven Batson cases and the four O'Neil cases collectively, in which it held that the government's claims were barred by limitations and were in any event invalid because section 722.817(b) of the regulations was unconstitutional. The memorandum concludes by stating that the defendants' motions for summary judgment are hereby granted, all relief requested by the government is denied, and "a take-nothing judgment will be entered against the plaintiff and in favor of each defendant." Also on April 3, 1981 the district court signed a series of eleven separate one-page judgments, one in each of the eleven cases. It is plain that the court intended each of the April 3 O'Neil judgments to become final as a result of the severance. The severance order itself was included as the last paragraph of each of the judgments in each of the four O'Neil cases, which were written as separate documents, each with the heading "Judgment." One such judgment is reproduced in the margin as an example.[3]

---

2. The government argues at one point in its principal brief: "To use Rule 21 as the district court has here ... circumvents the clear requirements of Rule 54(b)." In the portion of its reply brief dealing with the Rule 60(b) motion, it argues that its interpretation of the judgments as being under Rule 42(b) was a "mistake."

3. The April 3, 1981 judgment in the Alvin O'Neil and Thurston O'Neil case reads as follows:

"IN THE UNITED STATES DISTRICT COURT
"FOR THE NORTHERN DISTRICT OF TEXAS
"LUBBOCK DIVISION

"UNITED STATES OF AMERICA, )
 )
 "Plaintiff, )
 )
"v. ) CIVIL ACTION
 ) NO.
"ALVIN O'NEIL and ) CA–5–79–54
"THURSTON O'NEIL, )
 )
 "Defendants. )

Aside from the names of the parties involved, each of the four judgments was identical; each was issued as a separate document; and nothing on the face of any of these judgments suggested in any way that they were not final. The contrast between the lengthy, collective "Memorandum and Order" and each separate one-page "Judgment" is plain. The latter were plainly the operative, final judgments called for by the former and were in the standard judgment format, signed by the district judge, and filed in accordance with Fed.R. Civ.P. 58 and 79(a).[4]

That these judgments were in fact intended to be final is also evident from the existence of the seven other judgments, those in the Batson cases, which were also issued the same day. No counterclaims were present in those seven suits and, with the exception of the paragraph relating to severance (and the docket numbers and party names), they were identical to the O'Neil judgments, for each of these eleven judgments were rendered pursuant to the same "Memorandum and Order." Without question the Batson judgments were final, and the government took timely appeals from each of them. In light of these eleven dispositions, each issued separately and each with the heading "Judgment" and in traditional final judgment format, the district

court's intent that they *all* be considered final is unmistakable.

We also have before us the district judge's explanation of the basis of his April 3, 1981 order made in his September 15, 1981 opinion granting appellees summary judgment in the severed counterclaim suits. He stated:

"Under Rule 21, the court may sever any claim against a party and proceed with it separately. The court has broad discretion in granting a severance, *Spencer, supra* at 361–62; *Hebel v. Ebersole,* 543 F.2d 14, 17 (7th Cir.1976), and thus, the order of April 3, 1981 is intended to be and should be construed as a severance of the defendants' counterclaims in accordance with Rule 21.

"The main action concerning liability for alleged overpayments is logically separable from a counterclaim to simply release payments which have been withheld. Even though these counterclaims were compulsory, severance would not be precluded. *Spencer, supra* at 361. The fact that a judgment could be entered in the main action is a further indication that severance was appropriate and shows that the nature of counterclaims did not affect any portion of the result in the main actions. *See e.g. Hebel v. Ebersole, supra* at 17. Consequently, *separate trials to reach a single judgment were*

"JUDGMENT

"The defendants' motion for dismissal or alternatively for summary judgment and the plaintiff's motion for remand and cross-motion for summary judgment in this case came on for hearing before the Court, the undersigned Judge presiding, and the issues having been duly heard and a decision having been duly rendered,

"It is Ordered and Adjudged that the plaintiff, United States of America, take nothing of and from each defendant, Alvin O'Neil and Thurston O'Neil, and the complaint against said defendants is dismissed with prejudice.

"The defendants' counterclaim against the plaintiff is severed from the cause of action alleged by plaintiff and will be tried separately and at a later date.

"All other relief prayed for not herein granted is denied.

"The Clerk will furnish a copy hereof to each attorney.

"Dated at Lubbock, Texas this 3rd day of April, 1981.

"/s/ HALBERT O. WOODWARD
"Chief Judge
"Northern District of Texas"

4. These rules state, in part:

"Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)." Fed.R.Civ.P. 58.

"All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number. These entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process. The entry of an order or judgment shall show the date the entry is made." Fed.R.Civ.P. 79(a).

unnecessary in view of the distinct claims. The judgments on the main actions could be entered without any consideration of the counterclaims and severance was therefore proper.

"Accordingly, the order of April 3, 1981 was properly appealable and since the government failed to pursue such appeal, the order is a final adjudication of the main actions."

Of course, the district court cannot by this characterization of its order create a severance under Rule 21 where one did not exist before. Nevertheless, the September 15 opinion confirms what is plain from the April 3 judgments themselves, as well as from the context in which they were rendered, namely, that a Rule 21 severance was intended and purportedly effected by those judgments. Thus, we conclude that the district court did in fact intend, and purported to effectuate, a Rule 21 severance by each of these four April 3 judgments, and that the government was properly made aware of it. *Cf. Hebel v. Ebersole*, 543 F.2d at 17.

### 2. The Effect of the Severance.

■■■ Having decided that the district court by each of its April 3 judgments in the original four O'Neil cases intended and purported thereby to sever the government's suit from the appellees' counterclaims, we must now determine the effect of such a severance. Severance under Rule 21 creates two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other. The presence of unresolved claims in the other action does not of itself implicate Fed.R.Civ.P. 54(b), because that Rule applies only where the unresolved claims are in the same action or suit.[5] We applied this principle in *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 193–94 (5th Cir.1980), as did the Seventh Circuit in *Hebel v. Ebersole*, 543 F.2d at 16–17. And the Second Circuit recognized its general validity in *Spencer, White*, 498 F.2d at 361. This result gives recognition to the difference between ordering separate trials under Rule 42(b), which does not result in discrete, independent suits, and severance under Rule 21, which does. *See Belmont Place Associates v. Blyth, Eastman, Dillon And Company*, 565 F.2d 1322 (5th Cir.1978).[6] That a Rule 21 severance creates separate, independent suits has likewise been recognized in other contexts. *See Wyndham Associates v. Bintliff*, 398 F.2d 614 (2d Cir.), *cert.*

---

**5.** *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 441 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (for purposes of Rule 54(b) "each civil action is to be viewed as separate unit", absent complete consolidation); *Ringwald v. Harris*, 675 F.2d 768, 770 (5th Cir.1982). *See also Johnston v. Cartwright*, 344 F.2d 773 (8th Cir.1965) (on motion to dismiss appeal), 355 F.2d 32 (1966) (on the merits) (judgment as to one of three defendants becomes appealable, without Rule 54(b) certificate, on dismissal without prejudice as to remaining defendants).

**6.** In *Belmont Place Associates* the district court dismissed the plaintiff's complaint and consolidated the defendant's counterclaim with another pending lawsuit. The plaintiff's attempted appeal of the dismissal without a Rule 54(b) certificate was denied, and this Circuit rejected the contention that the consolidation "reduced this action to a single claim lawsuit which was finally disposed of by the dismissal order," stating:

"The consolidation here, however, was for administrative convenience under the court's Fed.R.Civ.P. 42 powers, and not a Fed.R. Civ.P. 21 severance. It is only by a severance that one 'action' can become two. *Therefore*, the counterclaim continues as part of this 'action' and thus Rule 54(b) leaves us without jurisdiction." *Id.* at 1323 (emphasis added).

*Top Value Meats, Inc. v. FTC*, 586 F.2d 1275, 1280 (8th Cir.1978), is arguably to the contrary, but it appears from the opinion's citation to 9 Wright & Miller, Federal Practice And Procedure, § 2392, that the Court there regarded the order in question as one under Rule 42(b) for separate trial, rather than under Rule 21 for severance. Further, it appears in any event that the notice of appeal was untimely and that there was likely no district court judgment whatever, partial or complete, in the case dismissed on appeal.

*denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968) (transfer under 28 U.S.C. § 1404(a)).

■ A strikingly similar case to those presently before us is *Hilburn v. Butz,* 463 F.2d 1207 (5th Cir.1972), *cert. denied,* 410 U.S. 942, 93 S.Ct. 1359, 35 L.Ed.2d 608 (1973). There the plaintiffs brought suit in the district court seeking a mandamus against the Secretary of Agriculture to require him to remit them sums due under Department of Agriculture programs for the years 1968 through 1970, payment of which the Secretary had withheld because of administrative determinations that plaintiffs had been overpaid by at least the same amount under these programs for the years 1964 through 1967. As the *Hilburn* opinion reflects:

"... the Secretary counterclaimed seeking a judicial declaration of the Hilburns' liability for the alleged overpayments. The district court severed the counterclaim—which still waits the jury trial determination demanded by the Hilburns—and after a court hearing granted mandamus relief." *Id.* at 1208.

The Secretary appealed the mandamus judgment, and this Court reversed on the merits. While the opinion does not expressly address the issue of appellate jurisdiction, that, of course, is a matter which this Court is obligated to raise on its own motion,[7] and it is evident the *Hilburn* panel considered the appeal was properly before it, notwithstanding the undisposed of counterclaim, because of the severance.

■ Accordingly, on rendition of the April 3 judgments, the government's suits against appellees were in the posture where they contained no unresolved claims, and hence under Fed.R.App.P. 3(a) and 4(a) the government was required to appeal from the judgment and severance within sixty days. Since it did not do so, and did not request an extension under Rule 4(a)(5), we are without jurisdiction to consider its complaints of the April 3 judgments as such.

*Browder v. Director, Department of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521, 531 (1978); *Burnside v. Eastern Airlines,* 519 F.2d 1127, 1128 n. 2 (5th Cir.1975); *Gulf-Tampa Drydock Co. v. Vessel Virginia Trader,* 435 F.2d 150, 151 (5th Cir.1970).

3. The Government's Contentions.

■ The government contends that each severance was improper, and that hence we should disregard them and, in effect, treat them as nullities. It urges that Rule 21 may be used only to cure misjoinder of parties. While that is certainly a primary concern of Rule 21, it is not so limited. *Wyndham Associates v. Bintliff, supra; Sporia v. Pennsylvania Greyhound Lines,* 143 F.2d 105 (3d Cir. 1944). Rule 21 explicitly provides that "[a] ny claim against a party may be severed and proceeded with separately" (emphasis added). The government further asserts that severance may not be used to create finality for purposes of appeal, since this would invade the province of Rule 54(b). We likewise reject this contention. As we have noted above, Rule 54(b) applies where, but only where, there are multiple claims (or parties) in a single action; hence, its applicability will necessarily be affected by such matters as joinder of parties, severance, complete consolidation, dismissal of some parties and the like. *See Ringwald v. Harris,* 675 F.2d 768 (5th Cir.1982); *Johnston v. Cartwright,* 344 F.2d 773 (8th Cir. 1965) (on motion to dismiss appeal), 355 F.2d 32 (8th Cir.1966) (on the merits). This Circuit and others have recognized severance-created finality. *Oswalt v. Scripto, Inc., supra; Hilburn v. Butz, supra; Hebel v. Ebersole, supra.*

■ The government also contends that severance of a compulsory counterclaim is necessarily improper. However, in *Spencer, White* the court stated: "... the fact that a counterclaim is a compulsory one does not

---

7. *See Ringwald v. Harris,* 675 F.2d 768, 769 (5th Cir.1982); *Oswalt v. Scripto, Inc.,* 616 F.2d 191, 192 (5th Cir.1980); *Ronel Corporation v.* *Anchor Lock of Florida, Inc.,* 312 F.2d 207, 208 (5th Cir.1963).

*per se* preclude its severance ...." 498 F.2d at 361. And, as above noted, Rule 21 authorizes severance of "any claim." [8] Additionally, the government argues that the severances were improper because the Tucker Act, 28 U.S.C. § 1346(a)(2), would deprive the district court of jurisdiction over three of the four counterclaims following the purported severances. Since each severance was improper, the government argues, it was "null and void" and should be totally disregarded. Therefore, it is urged, the April 3 judgments in the four original O'Neil cases did not become final until the appellees' counterclaims were disposed of on the merits, and hence the government's appeal is timely in each case.

The government's primary reliance is on the Second Circuit's decision in *Spencer, White.* There, a construction contractor sued the owner for the unpaid contract balance, and the owner counterclaimed for damages caused by the contractor's negligence during construction. The district court, on motion of the contractor, severed the owner's counterclaim and rendered judgment for the contractor on its claim for the contract balance. The owner timely appealed from this judgment, and the Second Circuit dismissed the appeal *sua sponte,* holding that the severance was invalid, and that hence it lacked appellate jurisdiction since a final judgment did not exist because of the pendency of the unresolved counterclaim. It characterized the district court's action as being "transparently a confusion of Rule 21 with 42(b)," and went on to say that in any event the severance "should be disregarded out of hand as devoid on its face of any foundation for appellate jurisdiction or, at least, an abuse of discretion with the same result." 498 F.2d at 362. It further stated that "... the purported severance of the counterclaims, amounted at least to abuses of discretion, if not to action outside the powers of the district court." 498 F.2d at 364.

While the government's arguments that the severances here were improper are persuasive, and find support in *Spencer, White,* we do not regard them as determinative of the issue before us. If the April 3 judgments and severances were improper, they were not for that reason wholly void and inoperative, and the government's recourse was to challenge the district court's action on direct appeal or by mandamus. It could not simply sit by and disregard the district court's action, and then later attempt to attack it in an appeal from another judgment in a different case. This does not assume that the severances were proper; it merely assumes they were not so wholly void as to be subject to what is in effect a collateral attack. In *Spencer, White* the

8. We also observe that in *Cold Metal Process Co. v. United Eng. & F. Co.,* 351 U.S. 445, 452, 76 S.Ct. 904, 908, 100 L.Ed. 1311, 1318 (1956), it was held that a claim and compulsory counterclaim pending in the same suit were not so much a single claim that a judgment disposing of one but not the other could not be appealed pursuant to a Rule 54(b) determination. To the same effect is *Tompkins Motor Lines v. Georgia Broilers,* 260 F.2d 830 (5th Cir.1958). 6 Moore's Federal Practice § 54.35[1] at 583–84 states:

"It is also unnecessary to distinguish between compulsory and permissive counterclaims where the district court executes its [Rule 54(b)] certificate. For if it executes its certificate following an adjudication that finally disposes of a claim, that adjudication is final, although another claim (including a counterclaim) remains pending; and *it is immaterial whether the counterclaim is compulsory or permissive,* except as the relationship of the counterclaim to the claim bears upon

the district court's discretion in making the certificate." (Footnote omitted; emphasis added).

Our original decision in *Carter v. Croswell,* 323 F.2d 696 (5th Cir.1963), *withdrawn,* 325 F.2d 431 (5th Cir.1964), appears to be to the contrary. However, since it was withdrawn it is not binding precedent, although it is persuasive. In this regard, we note that Judge Rives filed a strong dissent to the original opinion, based on *Cold Metal.* Moreover, one recognized commentator has stated that the original opinion in *Carter v. Croswell* "seems out of harmony with" *Cold Metal.* 6 Moore's Federal Practice § 54.35[1] at 582. That authority also observes that *Carter v. Croswell* may be explained on an abuse of discretion theory. *Id.* n. 9. We believe the law of this Circuit to be that the mere fact that an unresolved compulsory counterclaim remains pending in the action does not per se necessarily prevent a proper Rule 54(b) certification and appeal.

severance was set aside in a direct proceeding timely brought to the Court of Appeals. While *Spencer, White* does contain indications that the severance there was beyond the district court's power, we construe this language to mean that under the circumstances the severance was as a matter of law an erroneous exercise of the court's power, rather than an action over the subject matter of which the district court had *no* such power. Moreover, we believe that *Spencer, White* is primarily based on a determination of abuse of discretion. So far as *Spencer, White* holds that a severance, which is not void but is merely erroneous or an abuse of discretion, must be wholly disregarded and treated as if it had never been issued in determining appellate jurisdiction, we respectfully disagree. Appellate jurisdiction should not depend on a review for abuse of discretion or similar error of all prior trial court orders in a case adding, or refusing to add, or dropping parties or claims from the suit. In our view, such an approach "confuses error with nonfinality," to borrow the language of Justice Powell from the somewhat related context of *Browder,* 434 U.S. at 266, 98 S.Ct. at 561.

■ Our foregoing review of Rule 21 and its related jurisprudence convinces us that the severances ordered here were within the jurisdiction and power of the district court, notwithstanding that the exercise of that power might have been erroneous or an abuse of discretion under these particular circumstances. Accordingly, the severances, though perhaps erroneous and subject to being set aside, were not void or wholly ineffective, and until set aside they each operated to separate into two discrete civil actions what had previously been a single judicial unit.

**9.** This treatise also cites the statement in the 1966 Advisory Committee Note to Rule 19 that: "[e]ven if the court is mistaken in its decision to proceed in the absence of an interested person, it does not by that token deprive itself of the power to adjudicate as between the parties already before it . . . ."

**10.** A contrary result has been reached in cases under Rule 54(b). *See Acha v. Beame,* 570 F.2d 57 (2d Cir.1978); *Nettles v. General Accident Fire And Life Assur. Corp.,* 234 F.2d 243

■ We may roughly analogize the situation here to that involving an indispensable party. Where the case is timely and properly brought to the appellate court, the absence of such a party may be raised by the reviewing court entirely on its own motion, even though no issue was made of it below or by the parties to the appeal, and in such event the judgment below will be reversed. *Kimball v. Florida Bar,* 537 F.2d 1305, 1307 (5th Cir.1976). But the defect is not jurisdictional. *See Provident Bank & Trust Co. v. Patterson,* 390 U.S. 102, 120–22, 88 S.Ct. 733, 743–44, 19 L.Ed.2d 936, 951–52 (1968); *Moore v. Knowles,* 482 F.2d 1069, 1075 (5th Cir.1973); *Bry-Man's Inc. v. Stute,* 312 F.2d 585, 587 (5th Cir.1963). *See also Hoots v. Commonwealth,* 495 F.2d 1095, 1096 n. 3 (3d Cir.), *cert. denied,* 419 U.S. 884, 95 S.Ct. 150, 42 L.Ed.2d 124 (1974). As stated in 7 Wright & Miller, Federal Practice And Procedure § 1612 at 121: " . . . a decision rejecting a challenge based on the absence of an indispensable party is not subject to collateral attack in a subsequent action since, as discussed earlier in this section, the defect is not jurisdictional." [9] Accordingly, if A sues B and C, and A's action against C is then severed into a separate suit distinct from A's action against B, over B's valid objection that C is an indispensable party, and if the court thereafter renders judgment for A against B, such a judgment is not void or subject to collateral attack. Nor do we think that B can delay his appeal until, perhaps years later, there is some final disposition of the severed suit of A against C. Moreover, proper judicial administration counsels that B, if he feels aggrieved, should promptly seek relief in the appellate courts. [10] If the appellate

(5th Cir.1956). These decisions, however, are properly distinguished from the cases at bar. Each dealt with what was concededly a single judicial unit or civil action, while here we are faced with what at least purport to be separate suits. Moreover, in the cited cases appealability *directly* depended on the validity of the order in question, which was issued pursuant to a rule having as its purpose the fixing of appellate jurisdiction. These decisions, then, do no more than recognize that calling an order ap-

court determines that the severance was improper, it may, if it deems it appropriate in the particular circumstances of the case, rule only on that issue, and remand to the trial court with direction to set aside the severance and fully consolidate the cases. *See* 28 U.S.C. § 2106. *Cf. Kimball v. Florida Bar, supra.* This power, as well as the availability of mandamus supervision, should adequately serve to prevent improper manipulation of severance processes, should that ever become a problem.[11]

Accordingly, we hold the government's attempted appeal of the April 3 judgments was too late, and that these judgments are not brought forward for review by the government's November appeals of the severed suits of appellees against the government.

## B. THE RULE 60(b) MOTION.

The government also contends that the district court abused its discretion in denying its Rule 60(b) motions. These motions were filed in October. They asserted no error in the April 3, 1981 judgments, either on the merits or as to the severance, but merely requested in each case that the April 3, 1981 "judgment be vacated and reinstated to permit the United States to file a timely appeal which it previously failed to do because of a misunderstanding concerning the Court's judgment order." The motions were supported by an affidavit of government counsel reflecting that the government would have timely appealed those judgments had it believed it could do so, but felt it could not because the orders were considered as merely being for separate trials under Rule 42(b) rather than severance under Rule 21. The government argues that Rule 60(b) relief should be granted on the ground of mistake, which in

this case it states was a "misunderstanding arising out of the use of the ambiguous term 'sever,' in the court's orders." Rule 60(b) states in part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation...."

We note at the outset of our discussion that a Rule 60(b) motion may not substitute for a timely appeal. One of our leading decisions in this respect is *In re Morrow,* 502 F.2d 520 (5th Cir.1974). This rule is likewise recognized in our opinions in *Chick Kam Choo v. Exxon Corp.,* 699 F.2d 693, 695 (5th Cir.1983); *Silas v. Sears, Roebuck & Co., Inc.,* 586 F.2d 382, 386 (5th Cir.1978); *Edwards v. Joyner,* 566 F.2d 960, 961 (5th Cir.1978); *Burnside v. Eastern Airlines, Inc.,* 519 F.2d 1127, 1128 (5th Cir. 1978). *See also Mizell v. Attorney General,* 586 F.2d 942, 945 n. 2 (2d Cir.1978), *cert. denied,* 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979); *Kramer v. American Postal Workers Union,* 556 F.2d 929 (9th Cir.1977); *Demers v. Brown,* 343 F.2d 427 (1st Cir.), *cert. denied,* 382 U.S. 818, 86 S.Ct. 40, 15 L.Ed.2d 64 (1965). *Accord, Fox v. Brewer,* 620 F.2d 177, 180 (8th Cir.1980). *But see Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institute,* 500 F.2d 808 (D.C.Cir.1974). The government, as we have held, failed to appeal from the

---

pealable does not necessarily make it so. On the other hand, Rule 21 does not have as its major function the regulation of appeals; a severance creates separate judicial units, and appealability is but a possible *collateral* consequence of that, just as appealability may also be collaterally affected by actions respecting the addition (or refusal to add) or deletion of parties or claims or the complete consolidation of suits.

11. We do not believe that the *Spencer, White* approach would result in appreciably fewer appeals, as few parties indeed would intentionally forego a protective appeal on the hope that in a later appeal the appellate court would determine the earlier severance to have been improper or an abuse of discretion.

judgments in the four original O'Neil cases. Thus, our review of this question is "limited to the district court's exercise of discretion in denying the Rule 60(b) motion ...," *Burnside v. Eastern Airlines, Inc., supra* at 1128, and may not extend in any way to a consideration of the merits of the government's case. *Browder,* 434 U.S. at 263 n. 7, 98 S.Ct. at 560 n. 7.

■ We hold that the district court did not abuse its discretion in denying the Rule 60(b) motions. Except in truly extraordinary cases, Rule 60(b) relief should not be used to extend the time for appeal, and, as the above-cited cases reflect, courts have regularly rejected efforts to use Rule 60(b) in this way.[12] *See also Edwards v. Velvac, Inc.,* 19 F.R.D. 504 (E.D.Wis.1956); *Frank v. New Amsterdam Casualty Co.,* 27 F.R.D. 258, 259–60 (E.D.Penn.1961); *Lapiczak v. Zaist,* 54 F.R.D. 546, 547 (D.Vt.1972). As noted, the appeal periods in Fed.R.App.P. 4 are mandatory and jurisdictional. *Browder,* 434 U.S. at 264, 98 S.Ct. at 560. Rule 4 also includes a means by which the period for appeal can be extended, and Rule 60(b) cannot be used to circumvent its procedures, which embody the significant principle of protecting the finality of judgments. This is particularly so where, *as here,* the Rule 60(b) motion is made after time for appeal has expired, and the movant neither complains of any denial of a full and fair hearing before the district court nor seeks by the motion to have the district court alter its ruling, but rather asks only that the order be vacated and reentered. In such a case, the Rule 60(b) motion is avowedly being used *only* to extend the time for appeal. It hence squarely collides with Rule 4(a)(5). *See In re Morrow, supra; Chick Kam Choo v. Exxon Corp.,* 699 F.2d at 696; *Silas v. Sears, Roebuck & Co., Inc.,* 586 F.2d at 386; *Demers v. Brown, supra.*

■ Additional time has been afforded on occasion under Rule 60(b) where the failure to appeal was caused by counsel's reliance on assurances by the court that a judgment would be withheld or that counsel would be specially notified of the rendering of judgment. *Smith v. Jackson Tool and Die, Inc.,* 426 F.2d 5 (5th Cir.1970); *Fidelity and Deposit Co. of Maryland v. USAForm Hail Pool,* 523 F.2d 744 (5th Cir.), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976). Such a case is not before us. As described above, the district court ordered the *severance* of the counterclaims in the four original O'Neil cases and rendered judgments on the government's claims in those cases. The court's intention that these judgments be considered final was plain. Neither the court nor opposing counsel, nor anyone else, in any way misled the government by suggesting otherwise. Thus, we find no abuse of discretion in the denial of the government's Rule 60(b) motions.

■ Without question the government made a good-faith "mistake". However, it was not the sort of mistake on which this character of Rule 60(b) relief could be based. As Wright notes:

> "[A] party cannot have relief under Rule 60(b)(1) merely because he is unhappy with the judgment. Instead he must make some showing of why he was justified in failing to avoid mistake or inadvertance. Gross carelessness is not enough. Ignorance of the rules is not enough, nor is ignorance of the law." 11 Wright & Miller § 2858 at 170 (footnotes omitted).

Mere "misjudgment or careless failure to evaluate" do not suffice. *Chick Kam Choo,* 699 F.2d at 697.

---

12. Neither is the "catchall" subsection (6) of Rule 60(b) a basis for such relief in this case. As Professor Wright states:

> "The broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests. In particular, it ordinarily is not permissible to

use this motion to remedy a failure to take an appeal. However this is not an inflexible rule and in unusual cases a party who has not taken an appeal may obtain relief on motion." 11 Wright & Miller § 2864 at 214–15 (footnotes omitted).

Moore agrees: "Like 60(b) generally, [footnote omitted] clause (6) cannot be used as a substitute for appeal." 7 Moore, ¶ 60.27[1] at 348.

The government's failure to appeal in these cases, or to at least inquire as to their status, amounts to want of adequate care or ignorance of the rules. The government argues that its decision not to appeal was based

"purely on a misunderstanding of the word 'sever,' a term which, according to the decisions of two courts [*Hebel v. Ebersole, supra,* and *Spencer, White & Prentis, Inc. v. Pfizer, Inc., supra*], has been used loosely to refer to the separation of issues under Rule 42(b), as well as in its stricter sense to order independent proceedings under Rule 21. The government understandably did not regard the order to sever the claims in the strict sense of the term because (1) no motion for severance had been filed; (2) the court did not focus on the issue of severance (as might be expected of a *sua sponte* order with such significant consequences); and (3) with the complaints dismissed, there were not two active issues to sever."

We find insufficient merit in this excuse. The idea that the district court had simply ordered separate trials on the counterclaims is untenable. The court's order in each of the cases stated: "The defendants' counterclaim against the plaintiff is *severed from the cause of action alleged by plaintiff* and will be tried separately and at a later date." (Emphasis added.) Only by disregarding the emphasized language in the court's orders could they be construed as providing only for separate trials. Rule 60(b) was not intended to afford an extension of time to appeal on account of mistakes of this nature. Something more must be required, else Rule 4(a)(5) is simply superfluous. *In re Morrow, supra.*

The government notes that no motion for severance was before the court and that the orders did not "focus on the issue of severance." Neither was there a Rule 42(b) motion for separate trials before the court, nor any "focus" on the issue of separate trials in the court's orders. Yet the government argues that it made the reasonable assumption that the court had simply provided for separate trials on the counterclaims. The government argues that the term "sever" is ambiguous because courts have occasionally used the term in a "loose" sense to denote the separation of trials under Rule 42(b), while in its strict sense it, indeed, refers to Rule 21. Again, the government's argument only emphasizes its lack of sufficient care, for it had no basis on which to merely assume, without inquiry of any sort, that the term was being used in other than its proper, technical, and "strict" sense. Certainly, it is the use of the term in its "loose" sense which creates confusion and which should be avoided. It is illogical, therefore, for the government to have merely *assumed* that the district court used "sever" in its "loose" and, technically speaking, improper sense.[13]

The cases cited by the government also fail to give us any basis on which to reverse the denial of the character of Rule 60(b) relief sought here. They do not address the special situation presented here, where Rule 60(b) is being employed exclusively to circumvent the appeal periods in Fed.R.App.P. 4(a).[14]

█ In the four original O'Neil cases the government simply failed to recognize the severance and the resulting finality of the April 3 judgments. It had ample opportunity within the sixty-day appeal period to

**13.** We likewise reject the contention that "with the complaints dismissed, there were not two active issues to sever." This circumstance points no more to separate trial than to severance, and at best appears irrelevant.

**14.** *Blois v. Friday,* 612 F.2d 938 (5th Cir.1980) (relief from a default summary judgment where attorney, due in part to his error, did not receive notice of the motion); *Chanofsky v. Chase Manhattan Corp.,* 530 F.2d 470, 472 (2d Cir.1976) (relief where attorney misunderstood that the court was treating his case as a trial on the merits); *Roberts v. Rehoboth Pharmacy, Inc.,* 574 F.2d 846 (5th Cir.1978) (relief where plaintiff's case was dismissed for failure to have his new counsel file a notice of appearance when plaintiff, acting pro se, thought he had complied with the direction of the court). In none of these cases was the Rule 60(b) motion used simply as a device to extend the time for appeal provided under Rule 4.

either resolve any confusion about the court's order, or to notice a protective appeal, yet it made no effort to do either. In these circumstances, we cannot hold that the district court abused its discretion in denying the Rule 10(b) motions which sought only an additional time for appeal after the Rule 4(a)(5) extension period had elapsed.

## C. THE SUMMARY JUDGMENTS ON THE O'NEIL COUNTERCLAIMS.

 Relying on the finality of its April 3 judgments the district court rendered summary judgment on the appellees' counterclaims in the severed cases. We have held that these counterclaims were severed by the district court. They thus became independent actions requiring an independent jurisdictional basis. Three of the four counterclaims on their faces reveal no basis for jurisdiction. The fourth refers to 28 U.S.C. §§ 1346(a)(2) and (b) of the Tucker Act as well as to 5 U.S.C. § 702 and other sections of the Administrative Procedure Act. The references in this complaint, however, are an insufficient basis for us to determine whether jurisdiction exists in the district court. There is no allegation with respect to section 1346(a)(2) that a contract existed between the counter-plaintiffs and the government, or, under section 1346(b), that any tortious conduct occurred. With respect to 5 U.S.C. § 702, the Supreme Court held in *Califano v. Sanders,* 430 U.S. 99, 107–08, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192, 200–01 (1977), that the Administrative Procedure Act affords no independent basis for jurisdiction. We also note that for all but one appellee the amounts claimed are greater than the $10,000 limit imposed by the Tucker Act, 28 U.S.C. § 1346(a)(2).

Thus, we are constrained to reverse and remand the district court's grant of summary judgment in the suits against the government so that jurisdiction, if it exists with respect to these suits, may be properly invoked. On remand, the district court should determine what, if any, collateral estoppel effects its dismissal of the government's claims against appellees in the four original O'Neil cases will have.

### III.

### CONCLUSION

With respect to the government's appeal in its suits against appellees, we affirm the district court's denial of the government's Rule 60(b) motions. That is all that is presented for review in those cases, since the government's November appeal of the judgments in appellees' suits against the government does not give us appellate jurisdiction over the April 3, 1981 judgments in the government's suits against appellees. Accordingly, we affirm the district court in the government's suits against appellees. We reverse the judgments in the appellees' suits against the government, and remand those cases to the district court for further proceedings consistent herewith.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.